## NOLAN v. CENTRAL GEORGIA POWER COMPANY.

1. The act of December 7, 1897 (Acts 1897, p. 68), authorizing corporations or individuals owning any water-power to condemn rights of way and other easements, etc., is not unconstitutional for the reason that the act contains two subject-matters, or matter in the body of the act different from what is expressed in the title.

2. In view of the provisions of the third section of the act of December 7, 1897, that the power given under this act shall not be used to interfere with any mill or factory actually in operation, the legislative purpose is indicated that the power to condemn land to flow-back water, given in section 1 of the act, includes lands which may contain a water-power not in actual use.

3. The provision of the constitution (art. 3, sec. 7, par. 17), that no law or section of the code shall be amended or repealed by mere reference to its title or to the number of the code section, etc., is confined to repeals and amendments expressly made, and has no application to repeals by implication.

(a) The act of December 7, 1897, is not in conflict with Civil Code, § 3061, defining the rights of a riparian owner of a non-navigable stream.

4. The generation of electricity by water-power, to be used for the purpose of lighting towns and cities, or supplying motive power to railroads or street-car lines, or supplying light, heat, and power to the public, subject to governmental control, is a public use, for the proper exercise of which the General Assembly may grant the right of eminent domain.

5. When a corporation desires to condemn property for a public use in the notice of condemnation to the landowner it must appear that the property sought to be condemned is intended to be devoted to a strictly public use.

6. The superior court can not confer upon a corporation chartered by it the power of eminent domain, but may incorporate a private corporation with such powers as will enable the corporation, by compliance with a legislative grant of eminent domain, to exercise the power conferred in the legislative grant.

7. There was no abuse of discretion in denying an injunction.

MARCH 3, 1910.

Petition for injunction.     Before Judge Felton.     Bibb superior court.     April 30, 1909.

*Dorsey, Brewster, Howell & Heyman,* for plaintiffs.

*Walter T. Johnson, Olin J. Wimberly,* and *Chester B. Masslich,* for defendant.

BECK, J.   The Central Georgia Power Company, incorporated by the superior court of Bibb county, Georgia, gave notice to Elizabeth C. Nolan, Annie L. Nolan, and O. R. Nolan of its intention to condemn certain described lands, in order to flow-back water in the development of its water-power.   Thereupon the landowners filed their petition against the power company to enjoin it from proceeding further in the condemnation of their land, on the ground that the act of the General Assembly, under which it is alleged the power company is proceeding, is unconstitutional for the various reasons assigned, and because the use for which their property is sought to be taken is private and not public.   After hearing evidence the judge refused an interlocutory injunction, and the plaintiffs excepted.   The act of the General Assembly, by virtue of which the power company claims its right to condemn, and which is assailed by the landowners as unconstitutional, is as follows:

"An act to authorize corporations or individuals owning or controlling any water-power in this State, or location for steam plant hereinafter mentioned, and operating or constructing, or preparing to construct thereon, a plant or works for generating electricity by water or steam-power, to be used for the purpose of lighting towns or cities, or supplying motive power to railroads or street-car lines, or supplying light, heat, or power to the public, to purchase, lease, or condemn rights-of-way or other easements necessary for such purposes upon the lands of others, upon first paying just compensation to the owners of the land to be affected.

"Section 1.   Be it enacted," etc., "That from and after the passage of this act any corporation or individual owning or controlling

any water-power in this State, or location for steam plant herein-after mentioned, and operating or constructing or preparing to construct thereon a plant or works for generating electricity by water or steam-power, to be used for the purpose of lighting towns or cities, or supplying motive power to railroads or street-car lines, or supplying light, heat, or power to the public, shall have the right to purchase, lease, or condemn rights-of-way or other easements upon the lands of others in order to run lines of wires, maintain dams, flow-back water, or for other uses necessary to said purposes, upon first paying just compensation to the owners of the land to be affected.

"Sec. 2.   Be it further enacted, That if said corporation or individual does not, by contract, procure the easements, rights-of-way, or other interest on property provided for in the first section of this act, they shall have the right to acquire or condemn the same in accordance with, and subject to, the provisions of the Code of 1895, from section 4657 to section 4686, inclusive, as embodied in the act of the General Assembly of this State approved December 18th, 1894, as therein prescribed for railroad, telegraph, canal, mining, and waterworks companies.

"Sec. 3.   Be it further enacted, That the power given under this act shall not be used to interfere with any mill or factory actually in operation."

Sec. 4.   (Repeals conflicting laws).

1, 2.   The first question for consideration is whether the act of December 7, 1897 (Acts 1897, p. 68), confers the right to exercise the power of eminent domain only in order to obtain rights of way or other easements necessary for the erection of poles, stringing of wires, and similar things for the delivery of electric power from the power plant, and its use, after transmission, in lighting towns and cities and supplying motive power to railroads or street-car lines, or supplying light, heat, or power to the public, or whether it also includes the right to condemn other easements essential in maintaining dams, backing water in their erection, and like uses essential to the development of the water-power and putting it into use in connection with the things above mentioned; in other words, whether the person or corporation owning or controlling the water-power must develop it and do the things needful for the generation of the electric power without the use of the State's right of emi-

nent domain, and have the right to exercise the power conferred upon him or it only in connection with the transmission of the power from the plant and its use at the point to which it is transmitted, or whether the act allows condemnation in connection with the development of the water-power, and the generation of the electric power, as well as in connection with its transmission. It is said that this court in *Oconee Electric Light & Power Company* v. *Carter,* 111 *Ga.* 106, construed the act as limiting the power of condemnation to rights of way and other easements pertaining to the transmission of electrical power, and as not conferring the right to condemn land to flow-back water when necessary to the development of the water-power. We do not understand that the court so decided. Although some of the language used in the syllabus may be susceptible of a double construction, when taken in connection with the opinion and the point in the case the syllabus will not bear the meaning for which counsel for plaintiffs in error contend. The point in the case was this: a water company which owned only a part of the water-power was attempting to condemn the interest of its cotenant; and the court simply held that it did not come within the purview of the act, as the act was never intended to confer upon one of two cotenants of a water-power the right to condemn the interest of the other therein. The act provides that any person or individual owning or controlling any water-power in this State, or location for steam plant hereinafter mentioned, and "operating or constructing or preparing to construct thereon a plant or works for generating electricity by water or steam-power to be used for the purpose of lighting towns or cities," etc. It deals not only with a person or corporation who has a water-power already developed and is ready for transmitting electricity, but also with one who has constructed or is preparing to construct a plant or works. Thus the exercise of the right of eminent domain for the public utility is not postponed until after the plant has been completed, but it is conferred also in connection with its preparation. Again, it is provided in the first section of the act that there shall be a right of condemnation, not only of rights of way, but also of "other easements upon the lands of others, in order to run lines of wire, maintain dams, flow-back water, or for other uses necessary to said purposes." The maintenance of dams and the flowing back of water are no part of the

transmission of the electric current or its utilization by the use of lamps or motors at the place to which it has been transmitted. Those words would be entirely useless and meaningless if the act confined the exercise of the right of eminent domain to the narrow purposes claimed. The general public objects, or utility, underlying this grant of the right to exercise the State's power of eminent domain would not be carried out and rendered completely effectual by condemnation for the purpose of transmission of the current and its utilization at the end of the line. The generation of electricity is as essential as its transmission. The ordinary method in which a water-power is utilized is by means of a dam. It could not be erected without causing backwater. If the narrow construction contended for were placed upon this act, the owner of a most splendid water-power could only develop it and use it in lighting cities to the extent to which he could build a dam without backing water beyond the confines of his own land. The right to back water on the lands of others is further indicated by the third section, which expressly provides "That the power given under this act shall not be used to interfere with any mill or factory actually in operation." This section would be without meaning or applicability unless the act intended to give the power to back water, except where it interfered with a mill or factory in actual operation. Giving to the act a reasonable construction in order to carry out its evident intent and purpose, it includes the power to condemn an easement in order to back water on the property of another in the necessary development of a water-power for the public purposes indicated; and this is true although the land on which the easement is contained may also have on it an undeveloped water-power, save as in the act excepted.

So construed, is the act unconstitutional as containing matter not covered by its title? "It is not essential that the title to the act should recite in minute detail all of its provisions; otherwise the act itself would be but a copy of the title." *Banks* v. *State,* 124 *Ga.* 16. "A substantial, not a literal, conformity of a law to its title is required by the constitution." *Macon & Birmingham R. Co.* v. *Gibson,* 85 *Ga.* 1. "This correspondence is to be determined in view of the subject-matter to which the legislation relates." Id. 20. See also *Hope* v. *Gainesville,* 72 *Ga.* 246; *Carroll* v. *Wright,* 131 *Ga.* 728-45. The words "and for other purposes"

are very frequently added at the end of a title of a legislative act, but they are not a sine qua non. Even without them it is substantial, not literal, compliance which is required. *James* v. *State,* 124 *Ga.* 72.

Tested by these rules, the title of the act under consideration was sufficiently broad to cover substantially the subject-matter of condemnation of easements in order to maintain dams or flow-back water. The title of the act, as already mentioned in regard to its body, showed that the condemnation was authorized to be made by corporations or individuals owning or controlling any water-power and operating or constructing or preparing to construct thereon a plant or works for generating electricity. Thus the title, as well as the body, of the act indicated that the condemnation might be had in advance of the construction or completion of the work, and was not required to wait until the power had been developed, and be then confined merely to condemning easements for the purposes of transmission. It specified the condemnation of rights of way. "or other easements necessary for such purposes upon the lands of others." This was broad enough to include the easements above mentioned. The contention that the words "for such purposes" mean merely the purposes of transmission of the electric current to the towns or cities, or the erecting of lines or poles therefor, is too narrow. "Corporations or individuals owning or controlling any water-power in this State, or location for steam plant hereinafter mentioned, and operating or constructing, or preparing to construct thereon a plant or works for generating electricity by water or steam power, to be used for the purpose of lighting towns or cities, or supplying motive power to railroads or street-car lines, or supplying light, heat, or power to the public," were authorized to make the condemnation. The power conferred is not merely for transmission, but for generating electricity to be used for certain purposes. Lighting towns or cities, or supplying motive power to railroads or street-car lines, or supplying light, heat, or power to the public, if used in a narrow and literal sense, no more include the power to condemn rights of way in the country than they do the erection of the dam and the overflowing of land. The words "for the purpose of lighting towns," etc., qualify the use to which the electrical power is to be applied when generated, in order to authorize condemnation.. The condemnation is to be permitted

by persons constructing or preparing to construct works "for generating electricity by water or steam-power to be used for the purpose of lighting," etc.    As mentioned above, generating electricity is quite as essential as transmitting it for the purpose of furnishing light or heat to the public.    The title of the act authorized condemnation of easements necessary for such purposes.    The body of the act does not contain anything substantially different from what is contained in the title, and the act is not unconstitutional on that ground.

3.    It is urged, that the effect of the act of December 7, 1897, is to repeal Civil Code, § 3061: "The owner of a stream not navigable is entitled to the same exclusive possession thereof as he has of any other part of his land; and the legislature has no power to compel or interfere with him in its lawful use, for the benefit of those above or below him on the stream, except to restrain nuisances;" and that for this reason the act is violative of art. 3, sec. 7, par. 17, of the constitution, which provides that no law or section of the code shall be amended or repealed by mere reference to its title or to the number of the code section, unless the amending or repealing act distinctly describes the act to be amended or repealed.    This provision of the constitution has reference to repeals and amendments expressly made, and has no application to repeals by implication. *Edalgo* v. *Southern Ry. Co.*, 129 *Ga.* 266.    An equally conclusive reply to this objection is that no legislature has the power to surrender the power of eminent domain so as to bind the State in the future to refrain from its exercise when a proper and necessary occasion shall arise.    15 Cyc. 559.    And it is not to be presumed that the quoted code section was intended to deprive the State of its power of eminent domain, but rather that it was definitive of the rights of one riparian owner as against others.

4.    Plaintiffs in error attack the act of December 7, 1897, as violating several provisions of the constitution.    It is claimed, that the act does not afford impartial and complete protection to property; that its enforcement will deprive them of their property without due process of law; that its enforcement will authorize the taking of private property for private purposes; that it violates the constitutional guaranty that "the exercise of the police power of the State shall never be abridged nor so construed as to permit corporations to conduct their business in such a manner as to in-

fringe the equal rights of individuals." All of these objections involve the single point of whether the generation of electricity by water-power for distribution and sale to the general public on equal terms, subject to governmental control, is a public enterprise, and the property so used is devoted to public use. If the use for which the act allows private property to be taken upon payment of just and adequate compensation is public, then none of these constitutional objections forbid it. The constitution permits individual property to be devoted to a public use, when necessary for the exercise of the use, upon payment of just and adequate compensation. The paramount question, then, is whether the use for which the private property is allowed to be taken by the act is a public use. While all the authorities concur that the question of public use is ultimately a judicial one, yet the courts have never been able to formulate so exact a definition as will determine every concrete case which may arise. Says Mr. Lewis in his work on Eminent Domain, vol. 1, § 253: "Courts have generally avoided, and wisely so, the enunciation of general principles or the giving of general definitions, which might prove stumbling-blocks in subsequent cases or work mischief in their practical application. It is the duty of courts simply to apply the law to the case in hand." We are mindful that the judicial thought of the country differs as to the application of the fundamental legal principles in determining whether a particular use is public. This diversity springs in part from the-fact that courts have considered local conditions and necessities as entering into the solution of the problem. As was said in Nash *v.* Clark, 27 Utah, 158, "What is a public use can not always be determined by the application of purely legal principles. This is evident from the fact that there are two lines of authorities, neither of which attempt to lay down any fixed rule as a guide to be followed in all cases. One class of authorities, in a general way, holds that by public use is meant a use by the public or its agencies, that is, the public must have the right to the actual use, in some way, of the property appropriated; whereas the other line of decisions holds that it is a public use within the meaning of the law when the taking is for a use that will promote the public interest and which use tends to develop the great natural resources of the commonwealth." Without stopping to analyze the accuracy of these general classifications, or marshaling the numerous cases

which might be put into one or the other class, we will immediately take up the concrete case we are called upon to decide. In *Jones v. North Georgia Electric Company,* 125 *Ga.* 618, this identical statute was held not to be violative of that clause in the constitution which prohibits the taking of private property without due process of law. The basal element in this holding is that the use for which property may be taken by the exercise of the right of eminent domain, as declared in the act, was public and not private. In the opinion Atkinson, J., says that "the public purpose is twofold; for it has the object, first, to develop the resources of the State by bringing its great water-powers from a condition of waste to one of profitable employment, and, second, to supply the demands and necessities of the public with light, heat, and power." We are asked to review that case, and upon that request we have examined a number of cases on the subject. Among the cases examined we find the following, in which it is held that the generation of electrical power for distribution and sale thereof to the general public on equal terms is a public enterprise, and property so used is devoted to a public use: Rockingham Co. Light & Power Company *v.* Hobbs, 72 N. H. 551; Minn. Canal & Power Co. *v.* Pratt, 112 N. W. 395; Spratt *v.* Helena Power Transmission Co., 35 Mont. 108; Salt Lake City *v.* Salt Lake City Water & Electrical Power Co., 25 Utah, 441. Indeed it is said in Minn. Canal & Power Co. *v.* Koochiching Co. (Minn.), 5 L. R. A. [N. S.] 638 (a well-considered case), that the only authority which flatly holds to the contrary is Brown *v.* Gerald, 100 Me. 351. In the latter case it was admitted that the furnishing of light and water to the general public was a public use, but it was said that the creation and distribution of electrical power was essentially different from the furnishing of light and water. The ground of differentiation was that as to light and water the units of service are small in comparison with the total capacity for service, whereas, with every unit of power service, the capacity to serve others is by so much exhausted. We are not satisfied that this differentiation rests upon sound basis of fact. Electrical power is capable of being subdivided into innumerable units and carried over long distances, and distributed in large areas, just like electrical lighting. Without repeating the arguments advanced in the *Jones* case, we adhere to the ruling therein made.

5.   But it is said that under the charter of the company, which authorizes a sale and distribution of electrical energy, it is possible for the company to sell all of its power to one or a few customers, and thereby devote its plant to a private use.   The reply to this argument is, that in the notice of condemnation required by the act (Civil Code, § 4669) the condemnor must recite that the property proposed to be condemned is for a strictly public use, and when it is condemned for such public use it can not be diverted to a private use without giving an appropriate cause of action to the landowner whose property was taken and also to the public, either to restrain the unlawful diversion or to have other appropriate relief. *Jones v. North Georgia Electric Co.*, supra; *Mayor &c. of Macon* v. *Harris*, 73 *Ga.* 429.   As was said by the Supreme Court of Kansas: "We see no greater reason for denying to a private corporation the power of eminent domain for the promotion of a public use, because by its charter it is also authorized to engage in a private enterprise, than to deny to a private person the same power because he is inherently endowed with the same authority." Lake Koen Nav. Reservoir & Irrig. Co. *v.* Klein, 63 Kan. 484; Harland *v.* Centralia Ry. & Power Co., 42 Wash. 632 (7 L. R. A. [N. S.] 198).   The power company complied with the statute in this respect, and the possibility that it might hereafter serve a private interest is too remote a contingency to destroy the power of eminent domain conferred by the act of 1897.

6.   The power of condemnation can not be conferred by the superior court upon a corporation of its creation.   The constitution declares that the General Assembly shall have no authority to grant corporate powers and privileges to private companies, but it shall prescribe by law the manner in which such powers shall be exercised by the courts (Civil Code, § 5780).   The power of the superior court is limited to the creation of the legal entity, with the bestowal of such accessorial powers and duties as the General Assembly may authorize.   The sovereign right of eminent domain is lodged with the General Assembly, and it may grant its exercise in a proper case either to an individual or to a private corporation. The power company's right of condemnation in this case comes from the act of 1897, and not from its charter.

7.   Many objections were made to parts of the affidavit of Charles F. Howe, a witness for the defendant.   None of the ob-

jections require discussion, and none. of them render a reversal necessary. As to the various questions of fact, we think the evidence was sufficient to support the judgment refusing an injunction; and, applying the legal principles herein ruled to the evidence, we do not think there was an abuse of discretion in refusing an injunction.

*Judgment affirmed. All the Justices concur, except Atkinson and Holden, JJ., dissenting.*

HOLDEN, J. The writer can not agree to the ruling made in the 1st headnote and 1st division of the opinion in this case, but must dissent therefrom. Whether the body of the act in question is such as to give the right of condemnation is a question not necessary to be decided, in the opinion of the writer, for the reason that the title of the act does not authorize legislation giving the right of condemnation of an easement to flow-back water and thereby destroy the water-power of another. The title of the act in question is as follows: "An act to authorize corporations or individuals owning or controlling any water-power in this State, or location for steam plant hereinafter mentioned, and operating or constructing, or preparing to construct thereon, a plant or works for generating electricity by water or steam-power, to be used for the purpose of lighting towns or cities, or supplying motive power to railroads or street-car lines, or supplying light, heat, or power to the public, to purchase, lease, or condemn rights of way or other easements necessary for such purposes upon the lands of others upon first paying just compensation to the owners of the land to be affected." In the case of *Oconee Electric Light &c. Co.* v. *Carter,* 111 *Ga.* 106, in construing the act in question, the following rulings were made in the headnotes: "The act of December 7, 1897 (Acts 1897, p. 68), confers the power to condemn the property of others upon such corporations or individuals only as own or control any water-power in this State, or location for steam plant. It confers no power to condemn a water-power, but only to condemn rights of way or other easements upon the lands of others in order to run lines of wire, maintain dams, etc., or for other uses necessary to transmit electricity for the purpose of lighting towns or cities, or supplying motive power to railroads or street-car lines or heat or power to the public. It confers no power to condemn an undivided interest or easement in a water-power the remainder

of which is owned by the electric-light corporation which is seeking to condemn. There is no general law giving electric-light companies power to condemn the private property of others." In 8 Words & Phrases, 7414, a water-power is thus defined: "The' water-power to which a riparian owner. is entitled consists of the fall in the stream when in its natural state as it passes through his land or along the boundary of it; or, in other words, it consists of the difference of level between the surface where the stream first touches his land and surface where it leaves it. This natural power is as much the subject of property as is the land itself of which it is an incident." Under the title of the act, above set out, legislation could not be had giving the right of condemnation to a corporation or an individual who merely owned or controlled a water-power, or location for a steam plant. Such corporation must not only own or control such water-power, or location for a steam plant, but must be operating or constructing, or preparing to construct thereon a plant or works for generating electricity by water or steam-power. Such corporation or person must not only be one of the kind above named, but the electricity generated must be "used for the purpose of lighting towns or cities, or supplying motive power to railroads or street-car lines, or supplying light, heat, or power to the public." Hence it will be seen that the words in the title of the act, through the word "public," inclusive, are descriptive of the corporation or individual who is to have the right of condemnation. Such corporation or individual, under the title of the act, is to have the right to "condemn rights of way or other easements necessary for such purposes." The purposes referred to relate only to the ones named in the title of the act, to wit, the purposes of "lighting towns or cities, or supplying motive power to railroads or street-car lines, or supplying light, heat, or power to the public." Legislation to condemn rights of way or other easements for any other purposes would not be authorized under the title of this act. The purpose for which the defendants in error contend that the body of the act permits them to condemn rights of way, or other easements, is that of flowing-back water over the water-power of another. Under the title of this act, legislation was not authorized except to condemn rights of way or other easements when necessary for the purpose of *using* the product of the power owned or controlled. No legislation was author-

ized giving the power to condemn rights of way, or other ease-ments, for the purpose of acquiring *additional* water-power. The legislation which the defendant in error contends was had under the title of this act was to give the owner of a water-power the right to take the water-power of another and use the product thereof for his own benefit. The writer can not agree that the title of the act authorized any such legislation, and must therefore dissent from the ruling above referred to and from the judgment of affirmance in this case. I am authorized to state that Justice Atkinson concurs with the writer in this dissent and in the views above set forth.