## CENTRAL GEORGIA POWER CO. *v.* HAM, ordinary, *et al.*

1. Where a corporation, being authorized by law so to do, erected a dam across a stream, and constructed in connection therewith a plant for generating electricity by water, to be used for the purpose of lighting towns or cities, supplying motive power to street-car lines, and furnishing light or power to the public, an ordinary had no jurisdiction to proceed summarily, under the Civil Code, § 5333, for the purpose of abating such dam and plant as a public nuisance.
2. Where an ordinary, upon the affidavits of certain freeholders, was taking steps to cause a jury to be summoned, and to try the question whether such a dam and plant constituted a public nuisance, it was error for the judge of the superior court to refuse to grant a writ of prohibition to prevent him from proceeding further.

MARCH 1, 1913.

Petition for prohibition. Before Judge Daniel. Butts superior court. April 4, 1912.

*Hatcher & Smith* and *Greene F. Johnson,* for plaintiff.

*H. M. Fletcher,* for defendants.

FISH, C. J. J. L. Barnes and others, citizens and freeholders of Butts and Jasper counties in this State, instituted proceedings against the Central Georgia Power Company, hereinafter referred to as the Power Company, before the ordinary of Butts county, to abate an alleged public nuisance, under the provisions of the Civil Code, § 5333. The Power Company petitioned the judge of the superior courts of the circuit for the granting of the writ of prohibition against the ordinary, prohibiting him from going further with such proceedings, on the ground that for various reasons stated he was without jurisdiction in the matter. The writ was refused, and the Power Company excepted. On the hearing before the judge, who by consent passed on all issues in the case, there was evidence to the following effect: The Power Company is a public-service corporation, chartered under the law of this State, and owns and controls the water-power at Capps and Lloyd Shoals on the Ocmulgee river in Jasper and Butts counties, where it has constructed a dam and hydro-electric power plant for generating electricity by water, to be used for the purpose of lighting

towns and cities, supplying motive power to railroads and street-car lines, and supplying light, heat, and power to the public. The Power Company has entered into long-term contracts with various municipalities, corporations, factories, street-car lines, and industrial enterprises, to furnish them with electric power. Such contracts have been entered into with the Macon Railway & Light Company to supply it with the entire motive power for the operation of its cars, also with the City of Macon to furnish it with electric lights, and with the Cities of Forsyth, Barnesville, Griffin, and Jackson, to furnish electric lights for them and electrical power to operate the waterworks of these cities. The Power Company, by the authority and approval of the Railroad Commission of this State, has issued its capital stock of the par value of four million dollars, and its bonds to the amount of three million dollars, for the purpose of acquiring the necessary lands, rights, and properties, to be used in connection with its water-power and for constructing its dam and hydro-electric power plant at the shoals above referred to on the Ocmulgee river, which, at that place, is not a navigable stream. The Power Company, in the exercise of its functions and duties as a public-service corporation, has made the reports required by law to the State Railroad Commission, and has obeyed its orders and recognized its jurisdiction to control, direct, and otherwise supervise and regulate the affairs of the Power Company. It owns the land on both sides of the stream where its plant is located. The ordinary and the citizens and freeholders who instituted the proceedings before him, as respondents to the petition of the Power Company, put in as evidence their verified answer to the petition. There were averments in the answer to the effect, that the Power Company had erected a high dam at the shoals referred to, which formed a very large body of water which was used to run water-wheels which furnished power for running valuable machinery; that the dam was erected and being used for the purpose of supplying water-power in operating water machinery of a valuable consideration; "that part of the dam . . is in Jasper county, but that nearly all of said dam is in Butts, and most of the pond of water is in Butts county;" and that backwater from the dam causes sickness in its vicinity where such citizens and freeholders reside.

In view of the facts stated, did the judge err in refusing to grant

the writ of prohibition? The answer depends on whether the ordinary had jurisdiction to proceed summarily, under the Civil Code, § 5333, to abate the alleged public nuisance. It is the province of the General Assembly to judge of the exigencies requiring the exercise of the right of eminent domain. Civil Code, § 3625. In the exercise of that province, that body saw fit to pass an act in 1897, which is embodied in the Civil Code, § 5240, which is as follows: "Any corporation or individual owning or controlling any water-power in this State, or location for steam plant hereinafter mentioned, and operating or constructing or preparing to construct thereon a plant or works for generating electricity by water or steam-power, to be used for the purpose of lighting towns or cities, or supplying motive power to railroads or street-car lines, or supplying light, heat, or power to the public, shall have the right to purchase, lease, or condemn rights-of-way or other·easements upon the lands of others in order to run lines of wire, maintain dams, flow-back water, or for other uses necessary to said purposes, upon first paying just compensation to the owners of the land to be affected." In 1908 an act was passed, now appearing in the Civil Code, § 3634, as follows: "It shall be lawful for all corporations and individuals owning or controlling lands upon opposite sides of any stream in. this State, which is not a navigable stream as defined by section 3631, to construct and maintain a dam or dams across such stream for the development of water-power and other purposes, together with canals and appurtenances thereof: Provided, that this section shall not be construed to release individuals or corporations constructing such dam or dams and appurtenant works from liability to private property for damages resulting from the construction and operation thereof, either by overflow or otherwise." In *Jones* v. *North Georgia Electric Company*, 125 *Ga.* 618, 626 (54 S. E. 85, 6 L. R. A. (N. S.) 122, 5 Ann. Cas. 526), where it was held that the act of 1897 was not unconstitutional in that it authorized individuals to exercise the State's right of eminent domain for other than public purposes, Justice Atkinson, in referring to the act, used this language: "It seems manifest that the public necessity and the public convenience and public welfare are to be subserved, and that for the accomplishment of these purposes it is necessary and proper for the State to make suitable provision, by the delegation of au-

thority, to condemn such property as may be needful for carrying those purposes into execution. By the terms of the act one of its direct purposes is to call into use the great water-powers of this State, in order to accommodate the necessities of the people. The present conditions are such that, under modern appliances, this result can be accomplished in no way except that which is proposed. It involves the problem of creating light, heat, and power at a remote point, for delivery by transmission over wires to the consuming public in neighboring and distant districts and cities, thus becoming necessary to pass over the lands of others. Thus we see the public purpose is twofold; for it has the object, first, to develop the resources of the State by bringing its great water-powers from a condition of waste to one of profitable employment; and, second, to supply the demands and necessities of the public with light, heat, and power." It was further said: "Here is the direct benefit to the State in developing its natural resources, and here are the resulting uses to the public which are so direct and far-reaching as to extend to every industrial enterprise and to the home of every individual." And again: "It is readily seen that one of the essential and constituent obligations upon the part of the individual who attempts to exercise the right of eminent domain under this act is that he shall serve all of the public fairly and without discrimination. Without such public service, his right would have no sanction under the act." In *Nolan* v. *Central Georgia Power Company,* 134 *Ga.* 201 (67 S. E. 656), it was in effect held, following the case of *Jones* v. *North Georgia Electric Company,* supra, that the generation of electricity by water-power, for distribution and sale to the general public on equal terms, is a public enterprise, and property so used is devoted to a public use. The public nature of the business conducted by electric-light and power companies is clearly indicated by the law of this State placing them under the general supervision of the Railroad Commission. Civil Code, § 2663. It is therefore clearly manifest from the foregoing that the Power Company, under its charter and the provisions of the code sections above quoted, was authorized by law to construct its dam and plant at the place where they are located, and to maintain and operate the same for the purpose of generating electricity by water-power, to be used for the lighting of towns or cities, the supplying of motive power to railroads or street-car

lines, and the supplying of light, heat, or power to the public. This being true, can such dam and plant be abated as a nuisance? In *Georgia Railroad Co.* v. *Maddox,* 116 *Ga.* 64 (42 S. E. 315), it was held: "Where a railroad terminal yard is located and its construction authorized under statutory powers, if it be constructed and operated in a proper manner, it can not be adjudged a nuisance. Accordingly, injuries and inconveniences to persons residing near such a yard, from noises of locomotives, rumbling of cars, vibrations produced thereby, and smoke, cinders, soot, and the like, which result from the ordinary and necessary, and therefore proper, use and operation of such a yard, are not nuisances, but are the necessary concomitants of the franchise granted. The terminal yard, the operation of which is sought to be enjoined in this case, was located and its operation authorized under statutory powers." Many authorities were cited in support of the ruling, among them *Vason* v. *South Carolina R. Co.,* 42 *Ga.* 631; *Burrus* v. *Columbus,* 105 *Ga.* 42 (31 S. E. 124); *Bacon* v. *Walker,* 77 *Ga.* 336; *Long* v. *Elberton,* 109 *Ga.* 28 (34 S. E. 333, 46 L. R. A. 428, 77 Am. St. R. 363). It follows from the ruling made in the *Maddox* case, supra, that as the dam and plant of the Power Company were located and constructed by authority of law, they can not be adjudged a nuisance if constructed and operated in a proper manner, and that injuries and inconveniences to persons residing near such dam and plant, which result from the ordinary and necessary, and therefore proper, use and conduct of the dam and plant, are not nuisances, but are necessary concomitants of the franchise granted. As already seen, Civil Code, § 3634 concludes as follows: "Provided, that this section shall not be construed to release individuals or corporations constructing such dam or dams and appurtenant works from liability to private property for damages resulting from the construction and operation thereof, either by overflow or otherwise." It would seem that this proviso is exclusive in confining the liability for the construction of dams, and appurtenant works of the character referred to in the section, to damages to private property resulting from the construction and operation of such dams and plants, either by overflow or otherwise, and in limiting the remedy to. actions for the recovery of such damages. Even if this be not true, however, and if any court has jurisdiction to abate as a nuisance injuries and inconveniences resulting from

the improper construction, maintenance, and operation of such dams and plants, we are quite clear that the ordinary, under the provisions of the Civil Code, § 5333, has no jurisdiction to summarily abate them as a public nuisance. That section is as follows: "If the nuisance complained of is a grist or saw mill, or other water machinery of valuable consideration, the same shall not be destroyed or abated except upon the affidavit of two or more freeholders, before the ordinary of the county in which the nuisance complained of may exist, testifying that the health of the neighborhood, according to their opinion and belief, is materially injured by such mill-dam, or other obstruction to a watercourse by other machinery, as may be complained of; whereupon it shall be the duty of such ordinary, as soon as practicable, to cause a jury of twelve men to be summoned by the sheriff, or his deputy, for the trial of the cause, who, together with the said court, shall attend at the court-house of said county to adjudge the case of nuisance complained of; and all parties shall have a reasonable time allowed them to summon their witnesses and procure their attendance." This section provides for a summary remedy, and therefore must be strictly construed. *Western & Atlantic R. Co.* v. *Atlanta,* 113 *Ga.* 548 (38 S. E. 996, 54 L. R. A. 294) ; *Meador* v. *Central Georgia Power Company,* 137 *Ga.* 196 (73 S. E. 3). As is seen, it provides that upon the affidavit of two or more freeholders that the health of the neighborhood, according to their opinion and belief, is materially injured by a mill-dam or other obstruction to a watercourse by other machinery, as may be complained of, the ordinary shall cause a jury to be summoned, who, together with the ordinary, shall "adjudge the case of nuisance complained of;" and if the matter complained of shall be adjudged to be a nuisance, it is clearly contemplated that the dam shall be destroyed and the machinery removed as § 5340 of the code expressly provides compensation to a sheriff for removing the machinery and dam when found to be a nuisance. *Meador* v. *Central Georgia Power Company,* supra. We have no difficulty in reaching the conclusion as already indicated, that this harsh remedy, originating in the act of the General Assembly passed in 1833, for the summary destruction of grist and saw mills, and other water machinery of value, when adjudged to be public nuisances because materially injurious to the health of the neighborhood, does not apply to a dam and hydro-

electric plant connected therewith, constructed and maintained by a quasi public corporation under express authority of law, for the purpose of generating electricity by water-power, to be transmitted to distant communities, to be used by the public for the purposes designated in the Civil Code, § 5240.

As the ordinary and the jury, which he was proceeding to have summoned in accordance with the provisions of the Civil Code, § 5333, were without jurisdiction to try the question whether the dam and hydro-electric plant of the Power Company constituted a nuisance, the judge of the superior court erred in refusing to grant the writ of prohibition, prohibiting the ordinary from taking further steps in the proceeding commenced before him.  See *Meador* v. *Central Georgia Power Company*, supra.

*Judgment reversed.  All the Justices concur.*