12216.   SMITH *v.* DALLAS UTILITY COMPANY.

Under the pleadings and the evidence, a verdict was demanded for the defendant, and the court did not err in so directing.

DECIDED MAY 11, 1921.

Action for damages; from Paulding superior court — Judge Irwin. November 4, 1920.

The plaintiff's petition was filed January 17, 1920, and alleged that in the year 1911 the Paulding County Power Company erected a dam across Pumpkinvine creek, and that this dam caused the waters of the creek to back, overflow, and submerge the plaintiff's lands, thereby destroying them for agricultural purposes; that she was thus deprived of the use of her lands for the years 1918 and 1919, and that they were of the yearly value of $1,600; that about February 10, 1918, the defendant, Dallas Utility Company, acquired the dam and its appurtenances from the Paulding County Power Company, and has since that time maintained the dam, the same being a nuisance; that about May 4, 1918, written notice was given to the defendant to abate the nuisance complained of, and, by its refusal to do so, she is entitled to damages from the defendant in the sum of $3,200 the value of the lands for the two years mentioned.

The defendant filed an answer, admitting the erection of the dam by its predecessor in title, and that it had continued to maintain the dam, notwithstanding the notice to abate, but denied that it was liable to plaintiff in damages for any amount, on the ground that if there was a right of action, it was barred by the statute of limitations.

The undisputed evidence showed the following material facts: The plaintiff was the owner of the lands in question, which, if

not covered by the waters of the creek, were fertile and susceptible of yielding 800 bushels of corn during the years 1918 and 1919, but the dam caused the bed of the creek to fill up with sediment, etc., with the result that its waters overflowed her lands to such an extent that no crops at all could be grown during the above-mentioned years, and practically none could be grown since the dam was constructed. While every year the water in the creek was rising some and the sand and the water on the plaintiff's lands becoming deeper, the fertility and value of the lands were practically destroyed soon after the dam was built, certainly within one year thereafter, as the last crop raised on the lands was in 1910, and since then it had been impossible to cultivate the lands or to raise anything thereon. The dam was built of concrete and was 30 or 35 feet high, and there was no way to prevent the lands in question from being overflowed, except by destroying the dam. The dam was properly constructed and maintained. In connection with the dam the defendant maintained an electric plant where electricity was generated and distributed to the public. From this plant the defendant furnished lights to the City of Dallas, for street-lighting purposes, to private residences and public buildings, and power for various mills and motors, and for the public generally. At the time the dam was erected (which was in 1910 or 1911) the Paulding County Power Company owned the lands on both sides of the creek and the bed thereof.

In 1913 the plaintiff sued the Paulding County Power Company for damage to the same lands from October, 1910, to January, 1913, alleged to have been caused by the erection and maintenance of the same dam, and obtained a verdict and judgment in her favor. The judgment, however, was never paid, as the Paulding County Power Company was subsequently placed in the hands of a receiver, and the plaintiff failed to intervene and obtained none of the funds in the hands of the receiver.

At the conclusion of the evidence the court directed a verdict for the defendant, and the plaintiff excepted.

*C. D. McGregor, A. L. Bartlett,* for plaintiff.

*W. E. Spinks, C. B. McGarity,* for defendant.

BROYLES, C. J. (After stating the foregoing facts.) Section 3634 of the Civil Code of 1910 makes it lawful for corporations or individuals, who own or control lands upon opposite sides of

any non-navigable stream in this State, to construct and maintain a dam across the stream for the development of water-power and other purposes. This right, however, does not release such individuals or corporations from liability for damage to private property, resulting from the construction and operation of such dam, either by overflow or otherwise. The plaintiff in this case therefore was obviously entitled to compensation for the damage to her lands resulting from the overflow of the creek caused by the building of the dam in question. But who was liable for this damage and what was the plaintiff's remedy? The dam, which the plaintiff testified was the cause of her damage, was not constructed by the defendant, but was built by its predecessor in title 8 or 9 years prior to the bringing of this suit. This brings us to the controlling question in the case, to wit, was the plaintiff's right of action barred by the statute of limitations? The construction of the dam being authorized by law, and it being properly constructed and maintained, and the plaintiff being entitled, under the law, to compensation for whatever damage she may have received, her right of action accrued upon the completion of the dam *and the infliction of the injury to her property;* and, it being the statute law of this State, that " all actions for trespass upon or damage to realty shall be brought within four years after the right of action accrues " (Civil Code, § 4495), and the undisputed evidence showing that the dam — the cause of the damage to plaintiff's realty — was erected, *and the damage to her lands inflicted,* more than four years prior to the bringing of this suit, her right of action was barred by the statute of limitations.

The plaintiff contends, however, that her right of action was not so barred, because, she insists, the defendant was maintaining an abatable and continuing nuisance after notice to abate the same. While it is true that every continuance of a nuisance not permanent and which can and should be abated is a fresh nuisance for which a new action will lie (*Southern Railway Co.* v. *Morris,* 119 *Ga.* 234, 46 S. E. 85), the facts of the instant case fail to bring it under that well-settled rule of law. In the first place, the dam in question was not, in contemplation of law, a nuisance The undisputed evidence shows that the construction of the dam was authorized by law, and that it was properly constructed and maintained. This being true, it cannot be adjudged a nuisance.

See *Central Georgia Power Co.* v. *Ham,* 139 *Ga.* 569, 573 (77 S. E. 396, 398), where the Supreme Court said: "As the dam and plant of the Power Company were located and constructed by authority of law, they cannot be adjudged a nuisance if constructed and operated in a proper manner." The case of *Georgia Railroad & Banking Co.* v. *Maddox,* 116 *Ga.* 64 (4) (42 S. E. 315), is also authority for the same proposition, it being there held that, "where a railroad terminal yard is located and its construction authorized under statutory powers, if it be constructed and operated in a proper manner, it cannot be adjudged a nuisance." As the dam in the instant case cannot be adjudged a nuisance, it necessarily follows that the defendant was not guilty of maintaining a nuisance. In the second place, even if it could be held that the maintenance of the dam amounted to a continuing nuisance, the facts of the case show beyond question that the dam was necessarily permanent, and that the nuisance was not abatable, and, therefore, there could be no fresh nuisance for which a new action would lie. A dam and its appurtenances, constructed for the development of electricity and the distribution of it to the public for light, heat, and power, is a public improvement within the meaning of the law (*Jones* v. *North Georgia Electric Co.,* 125 *Ga.* 618, 54 S. E. 85, 6 L. R. A. (N. S.) 122, 5 Ann. Cas. 526; *Nolan* v. *Central Georgia Power Co.,* 134 *Ga.* 201, 67 S. E. 656) ; and where it has been properly constructed and maintained, the law will not compel its destruction because of damages flowing from its maintenance. The alleged nuisance — the dam — being permanent, and therefore not abatable, it follows that the damage to the plaintiff's land was also permanent, and, under such circumstances, it is the settled law of this State that all damages, past and prospective, must be recovered in a single action, and thereafter no other action therefor can be maintained. See *Central Georgia Power Co.* v. *Stubbs,* 141 *Ga.* 177 (80 S. E. 636), and cases cited.

The cases cited and relied upon by counsel for the plaintiff in error are clearly distinguishable by their facts from the instant case.

The constitutional questions argued in the brief of counsel for the plaintiff in error cannot be considered, either by this court or the Supreme Court, as it does not appear from the record that

any of those questions were raised in the trial court. *Bolton* v. *Newnan,* 147 *Ga.* 400, (94 S. E. 236).

It follows from what has been said that the court did not err in holding that the plaintiff's right of action was barred by the statute of limitations and in directing a verdict for the defendant.

*Judgment affirmed. Luke and Bloodworth, JJ., concur.*