22815. GEORGIA POWER COMPANY *v.* MOORE.

DECIDED SEPTEMBER 4, 1933.

*Colquitt, Parker, Troutman & Arkwright, Edgar B. Dunlap,* for plaintiff in error.

*Wheeler & Kenyon,* contra.

JENKINS, P. J. 1. Under section 4458 of the Civil Code (1910), the alienee of property causing a nuisance "is responsible for a continuance of the same," but in such a case "there must be a request to abate before action is brought." Thus, while an action will lie without such notice against one who erects and maintains a nuisance, notice is a prerequisite against one who merely acquires property on which there is an existing nuisance, passively permits

its continuance, and adds nothing thereto. *So. Ry. Co.* v. *Cook,* 106 *Ga.* 450 (4), 453 (32 S. E. 585); *Blackstock* v. *So. Ry. Co.,* 120 *Ga.* 414 (47 S. E. 902); *Roberts* v. *Ga. Ry. & Power Co.,* 151 *Ga.* 241, 245 (106 S. E. 258, 14 A. L. R. 1089), s. c. 24 *Ga. App.* 664 (101 S. E. 813); *DeLoach* v. *Ga. Coast Ry. Co.,* 137 *Ga.* 633 (3, *a, b*) (73 S. E. 1072). But the rule of the common law that requires a request to abate, as interpreted in *Bonner* v. *Welborn,* 7 *Ga.* 296, and thereafter embodied in every civil code of the State, is subject to well-recognized exceptions. While notice is required to one who merely purchases land and fails to remove a nuisance erected by another, yet it is not necessary to an alienee, who knowingly does some additional act, to actively maintain and use a nuisance originally created by another, or does something to increase the existing nuisance or its injurious effects, and thus creates in effect a fresh nuisance. 46 C. J. 742 (§ 324), 745 (§ 334). See, in this connection, *Felker* v. *Calhoun,* 64 *Ga.* 514, 515, where, as to the alienee, there was both no request to abate the injury caused by an overflow of water from a mill-dam, and "the evidence was sufficient to show" that the water was not raised "beyond the height it had attained when he, the defendant . . bought the mill and water power." This rule as to notice has also manifestly no application to a defendant alienee, charged with actively maintaining and increasing the height of a dam as a nuisance, who at a date prior thereto contracted in writing with its predecessors in title to "assume all debts, liabilities, and duties of the corporation originally constructing the dam in question and all intervening owners," with a provision "that it should from that date have said duties and liabilities transferred to [it] and enforced against it in the same manner and to the same extent as if said liabilities and duties had been incurred and contracted by it." Such a defendant is not entitled to claim the benefit of the statutory provision and legal rule, designed for the protection of mere purchasers of property who passively permit an existing nuisance to remain.

2. "A nuisance is anything that worketh hurt, inconvenience, or damage to another; and the fact that the act done may otherwise be lawful does not keep it from being a nuisance." Civil Code (1910), § 4457. "Section 3634 of the Civil Code of 1910 makes it lawful for corporations or individuals, who own or control lands upon opposite sides of any non-navigable stream in this State, to

construct and maintain a dam across the stream for the development of water power and other purposes. This right, however, does not release such individuals or corporations from liability for damage to private property, resulting from the construction and operation of such dam, either by overflow or otherwise." Where a dam is lawfully and properly constructed and maintained by a public utility company for the production of electricity, the company can not be held liable for creating or maintaining an abatable nuisance. *Smith* v. *Dallas Utility Co.*, 27 *Ga. App.* 22, 25 (107 S. E. 381). "That which the law authorizes to be done, if done as the law authorizes it to be done, can not be a nuisance." *Burrus* v. *Columbus*, 105 *Ga.* 42, 45 (31 S. E. 124) ; *Central Ga. Power Co.* v. *Ham*, 139 *Ga.* 569, 573 (77 S. E. 396) ; *Towaliga Falls Power Co.* v. *Sims*, 6 *Ga. App.* 749 (3, 4, 5) (65 S. E. 844). But see, as to the limitations of this rule, *Bass Canning Co.* v. *MacDougald Construction Co.*, 174 *Ga.* 222 (162 S. E. 687), and cit., s. c., 45 *Ga. App.* 120 (163 S. E. 515), where the acts done are not authorized under a general grant of legal power. Where property has been taken or damaged for public purposes by public authorities or a quasi-public corporation, the party injured, being entitled under the constitution (Civil Code, § 6388) to "just and adequate compensation," may bring one action therefor, within the time required by the statute of limitations, dating from the time of construction, not in tort for a nuisance, but to recover for the direct damage inflicted by the decrease in market value of the property damaged as measured by the difference in the market value before and immediately after the construction of the work, and excluding consequential damages afterwards accruing such as might be recoverable in tort based on the maintenance of a continuing, abatable nuisance. *City Council of Augusta* v. *Lamar*, 37 *Ga. App.* 418 (140 S. E. 763) ; *Bibb County* v. *Green*, 42 *Ga. App.* 552, 553 (2) (156 S. E. 745). The original injury and the damages then accruing at one time therefrom likewise form the basis of the right of action and recovery, even where the original work or act is a nuisance, if it consists of a non-abatable construction, such as a permanent concrete dam built by a public service corporation for the production of electric power, in which event "all damages, past and prospective, for the permanent injury of the property and any additional special damages must be recovered in a single action, and no other

action therefor can be maintained." *Smith* v. *Dallas Utility Co.,* supra; *Central Ga. Power Co.* v. *Stubbs,* 141 *Ga.* 172 (2 (d), 185 (80 S. E. 636). But the original construction neither controls the date as to the fixing of all injuries, nor requires that all grounds of action and damages be concentrated into a single suit, where the injury and damage do not result from the original construction of a nuisance, or from the creation and maintenance of a permanent, non-abatable, unchanged structure, but arise from a subsequent increase in the nature or effects of the original nuisance, or from a new and fresh nuisance although growing out of or related to the original nuisance, or from the continuance of an abatable nuisance, or where injury and damage do not result until after the original construction. *Sheppard* v. *Ga. Ry. &c. Co.,* 31 *Ga. App.* 653, 657 (121 S. E. 868).

3. The rules stated in the preceding paragraph control not only the right and method of recovery, but also the time when the statute of limitations begins to run, under section 4495 of the Civil Code, which provides that "all actions for trespass upon or damages to realty shall be brought within four years after the right of action accrues." See *King* v. *Miller,* 35 *Ga. App.* 427 (133 S. E. 302).

(*a*) "A nuisance, permanent and continuing in its character, the destruction or damage being at once complete upon the completion of the act by which the nuisance is created, gives but one right of action which accrues immediately upon the creation of the nuisance, and against which the statute of limitations begins, from that time, to run. . . But when such structure is permanent in its character, and its construction and maintenance are not necessarily injurious, but may or may not be so, the injury to be compensated in a suit is only the damage which has happened; and there may be as many successive recoveries as there are successive injuries. In such case, the statute of limitations begins to run from the happening of the injury complained of." *City Council of Augusta* v. *Lombard,* 101 *Ga.* 724, 727, 728 (28 S. E. 994).

(*b*) "Where a nuisance is not permanent in its character, but is one which can and should be abated by the person erecting or maintaining it, every continuance of the nuisance is a fresh nuisance for which a fresh action will lie. . . This action accrues at the time of such continuance, and against it the statute of

limitations runs only from the time of such accrual." *City Council of Augusta* v. *Lombard,* supra.

(*c*) "Where the structure, though permanent in its character, is not necessarily and of itself a permanent and continuing nuisance, but only becomes such in consequence of some supervening cause which produces special injury at different periods, a separate action lies for each injury thus occasioned, and the statute begins to run against such cause of action only from the time of its accrual—from the time when the special injury is occasioned." *City Council of Augusta* v. *Lombard,* supra. See also 37 C. J. 880 (§ 248), 883, 884 (§ 249), 886-889 (§§ 251, 252), 891-896 (§§ 255-258).

(*d*) "Although a dam may have remained unchanged for twenty years, yet if, during that time, it caused the filling up of the stream and the plaintiff's land with sand, increasing the height of the water and injuring and damaging the plaintiff, this was an invasion of his land, and he had the right to recover for any injury that occurred to him within four years preceding the bringing of his action." *Athens Mfg. Co.* v. *Rucker,* 80 *Ga.* 291 (3) (4 S. E. 885). See also *Williams* v. *So. Ry. Co.,* 140 *Ga.* 713 (79 S. E. 850). "A nuisance to the plaintiff's cleared and tillable land (the injury consisting in overflowing or saturating the same with water), although resulting from a cause intended to be perpetually operative and of a nature so to operate gradually and continuously," has been held actionable six years after its creation, "for damages on account of diminished or suspended fertility occasioned thereby with reference to the crops" for the two years prior to the action; "and the same nuisance, having been continued with like effect," was "again actionable . . for damage on account of diminished or suspended fertility with reference to the crops" for four subsequent years; "and the same nuisance, having been continued with like effect, was again actionable . . for damage on account of diminished or suspended fertility with reference to the crop for an additional subsequent year. If, however, the effect of the nuisance, at any stage, was to destroy wholly and permanently the fertility of the land, so that abating the nuisance and withdrawing the excess of water occasioned thereby would not restore the land and render it again fertile, the right to maintain successive actions relatively to subsequent years ceased, and a single action and re-

covery for such destruction could be maintained and would be final." *Danielly* v. *Cheeves*, 94 *Ga.* 263 (3), 269 (21 S. E. 524).

4. The plaintiff, as the owner of land, on April 1, 1930, filed suit against the defendant power company for injuries to his land, loss of rents from crops for 1928, 1929, and 1930, and for additional expenses in ditching, boxing, and piping, to drain the land, alleged to have been caused by an electric-power dam on the Chestatee river. It is alleged that the injuries were caused by the defendant's adding, in 1926, "about 2 feet in height on the top of its dam . . for the purpose of raising the water to a higher level," by its maintenance of the dam, and by "its causing the gate in said dam to be closed and remain closed;" that by such raising of the height of the dam, "water was backed up the river and the creeks further than before, and the creeks and ditches in and below petitioner's bottoms were filled with mud and sand, and the flow in said creeks and ditches was greatly hindered and checked, and petitioner's bottoms became too wet and soggy for cultivation, and it became impossible to drain and dry same;" that although such extra height was afterwards removed, it would be "three or four years before (plaintiff's) bottoms and the ditches and creeks therein can be restored to their normal condition." The defendant denied that there was any nuisance or injury, and pleaded and contends that the dam was constructed 30 years ago by another corporation, that it was merely an alienee of the property, that since the acquisition of the property by the defendant, the dam had not been raised or changed, but had been maintained as it was since it was constructed, and that "any damage caused by the construction or maintenance of said dam occurred more than 4 years prior to the institution of this suit, and for this reason said suit is barred by the statute of limitations." The jury returned a verdict of $1,800 for the plaintiff. Under the evidence, the dam was made of rocks and cribs or logs with additional timbers to level the height where it would sink in places. It was built in 1902 by another corporation, but was acquired by the defendant on November 16, 1926, under a contract (as stated in the 1st paragraph of the syllabus) assuming the liabilities, obligations, and status of the corporation erecting the same and its successors in title. The operations of the plant were abandoned at the dam on December 31, 1926, when the gate feeding the power dam was closed. The de-

fendant blew or tore out a part of the dam in the latter part of 1929. In 1928 the rainfall in the county where the property is located was 5.7 inches above normal, but in 1929 was more than 24 inches. The evidence was in sharp conflict as to just what changes had been made in the dam since its original construction, whether it had been raised by the defendant as alleged, what, if any, damage was caused, and whether this resulted merely from the excessive rainfall. There was, however, evidence from which the jury were authorized to find that since the dam was built it was several times repaired and parts of it raised, or (as defendant contended) merely releveled; that in 1926 or 1927 the defendant had caused the dam to be raised and changed from its original condition; and that this, or the closed gate in the dam, or the maintenance of the dam, or all of such causes, under the abnormal condition of the streams upon or near the plaintiff's land, in 1928 and 1929, caused the injuries and damage as alleged. The defendant excepts to the denial of its motion for a new trial, which is based on the general grounds, and on alleged erroneous instructions and refusals to charge.

An examination of the record in *Georgia Power Co.* v. *Tolbert,* 43 *Ga. App.* 328 (158 S. E. 760), wherein this court affirmed a judgment in favor of the tenant occupying the same land as that held by the present plaintiff as owner and landlord, and for the same alleged nuisance as that which is involved in this suit, shows that the pleadings, evidence, general grounds and exceptions to the charge in the motion for new trial, are all substantially the same as in the instant case, except that the defendant here claims that, as alienee of the dam, it was entitled to notice to abate any nuisance, that no such notice was given, and except as to certain assignments of error relating to the charge.

(*a*) Under the ruling in paragraph 1 of this decision, the defendant, being charged under its own contract, made when it acquired the dam, with the liabilities, duties, and status of the original constructor of the dam and the intervening owners, was not entitled to notice as a mere alienee under section 4458 of the Civil Code, as a condition precedent to the plaintiff's action. Moreover, while the evidence was conflicting, the jury were authorized to find, not only that the defendant was liable in the same manner as if it had constructed and maintained the dam prior to the time when it became the owner, but that its own acts had in effect actively

caused a fresh nuisance, which, though related to the original construction of the dam, themselves caused the injury and damages complained of.

(b) The previous decision of this court in *Ga. Power Co.* v. *Tolbert,* supra, while not in a case between the same parties and not establishing the law of the case, involved the right of the tenant of the present plaintiff to recover for a like cause of action and his own similar damages to the same land. It was there held that, "under the pleadings and the evidence the verdict was authorized," and that, "in the light of the entire charge of the court and the facts of the case, the grounds of the motion for a new trial, complaining of various excerpts from the charge and the failure to charge upon a certain alleged material issue, show no error requiring another trial of the case." The pleadings, evidence, and assignments of error (save a few additional exceptions in the present case), being substantially the same, as appears from an examination of the record in the former case, the rulings there made are controlling, and it is unnecessary to treat in detail the instant assignments of error except as to those additional exceptions which were not presented in the previous case.

(c) Under the rulings in divisions 2 and 3 of this decision and the previous decision of this court, the verdict for the plaintiff was fully authorized, notwithstanding the conflicting evidence for the defendant, and the jury were entitled to find that the injuries complained of constituted a nuisance for which the defendant was liable, and that the damages arose from injuries committed within four years prior to the action, so as not to be barred under the statute of limitations.

(d) The court did not err (as complained of in the first special ground of the motion for a new trial) in charging in almost identical language the provisions of section 4457 of the Civil Code, defining a nuisance. Such an instruction was proper under the pleadings and evidence. If special instructions relating to the erection and maintenance of hydro-electric dams by public utility corporations were desired, to elaborate or qualify the general abstract definition of a nuisance, they should have been requested in writing.

(e) No written requests to charge were made as to the legal principles the omission to charge which is complained of in the

2d, 7th, 8th, and 9th grounds. The issues and the general legal rules applicable to the pleadings and evidence were sufficiently covered by the charge given, in the absence of special requests. Under the 2d ground, the contention that "a dam, reservoir, and plant of a public service corporation, located and constructed by authority of law, can not be adjudged a nuisance, if constructed and operated in a proper manner," was not raised by the pleadings. The language of code section 4458 relative to the necessity of requesting an alienee to abate a nuisance, which the 7th ground contends should have been charged, was not applicable under the undisputed evidence that the defendant was not a mere alienee, but acquired the property under the express contract, above stated, to assume the duties, liabilities, and status of the original builder of the dam and intervening owners. With regard to the 8th ground, that the court failed to charge that the four-years statute of limitations was applicable against the plaintiff, and applied "from the time of the completed construction and operation" of the dam and reservoir in question, such an instruction would have been erroneous and inaccurate even as to the defendant's own contention, had the jury been charged that the four years applied from the time of the *operation* of the dam and reservoir, since it appears that the dam was continuously *operated* until its abandonment on December 31, 1926. The injuries and damage complained of occurred in 1927 and subsequent years to the time of filing suit, April 1, 1930. The four-year limitation preceding the action covered and included such times. The charge sufficiently and properly informed the jury that the plaintiff "would have a right to recover for any injury thus occasioned or caused in that manner within four years preceding the bringing of his action."

(*f*) The court did not err, as set forth in the 3d ground, in charging substantially as set forth in the plaintiff's petition his averments and contentions with regard to the causes and effects of his alleged injury. A similar charge was given and approved in the former case of *Tolbert* against this defendant (supra).

(*g*) The instruction in the 4th ground, as to the alleged effects of the raising or maintenance of the dam by the defendant, whether the injuries were so caused, and that if such effects did not occur until 1928 and 1929, the plaintiff's right of recovery would not be barred, was substantially the same as that given and approved in the former trial, and shows no error.

420

(*h*) Error is assigned in the 5th ground on this language of the charge: "Although a dam may have remained unchanged for a period of 20 years or more, yet if during that time it caused the filling up of the stream or streams in question, and if the plaintiff's land became wet and soggy by increasing the height of the water caused by the filling up of the stream or ditches with sand and mud, . . this would be an invasion of the rights of a person, and he would have a right to recover for any injury thus occasioned or caused in that manner within four years preceding the bringing of his action." This was substantially language of the decision in *Athens Mfg. Co.* v. *Rucker,* supra, the law of which was discussed in the preceding paragraph 3 (*d*), and was a repetition of an instruction by the trial judge in the former trial.

(*i*) The court did not err, as alleged in the 6th ground, in charging that although the dam had been across the river for twenty years or more, yet if subsequently, at the times at which, as alleged in the petition, the injury occurred, and it "didn't occur until the time as alleged in the plaintiff's petition, then his right to recover would not be barred, but he would be entitled to recover, if his damages were caused in that manner, for whatever amount you believe his damages to be," as to which the jury should look to "the contentions in his pleadings and the evidence in support of the same, if any." This instruction was very similar to one given in the previous case, and was in accord with the rules determined in *Athens Mfg. Co.* v. *Rucker,* and *Danielly* v. *Cheeves,* supra, and the principles stated above in division 3 (*b, c,* and *d*).

*Judgment affirmed. Stephens and MacIntyre, JJ., concur.*