## LYNN v. THOMSON.

1. The issue being whether a mill-dam injured lands of the plaintiff lying higher up on the same creek, evidence of the effect of the removal of dams from other creeks in another county upon the lands situated on those streams was properly excluded.
2. Whether a question asked a witness is relevant to the issue must, in great measure, be left to the discretion of the trial judge, with the burden upon him who asks it to show that it is relevant.
3. Under an issue involving the raising of a dam, the declarations of the builder, who died *ante litem motam*, as to the height of the dam are incompetent.
4. The admission of the owner of a dam that it had been raised, and his promise to restore the former height when another dam was built, does not prevent a prescriptive use in favor of the increased height, as against other persons than him to whom the admission and promise were made.
5. Where, in action for damages caused by a mill-dam, plaintiff brings out testimony of an offer, made by him to defendants just before suit, to purchase the dam for the purpose of destroying it, there is no error of law on the part of the judge in charging the jury that this offer was strong as an acknowledgment of defendants' right to maintain their dam as it then stood; nor was it a charge upon facts in violation of the constitution. *Art. IV.*, § 26.
6. The charge upon other matters in this case held not to be in violation of this provision of the constitution, as not a charge upon facts in issue, but a statement of inferences deducible from undisputed facts.
7. The judge charged the jury that the use of a dam for twenty years gave a prescriptive right; but the charge as a whole showed that by "the use of a dam" he meant an adverse use to the injury of plaintiff's land from the back-water caused by the dam. *Held*, no error.
8. He also charged the jury that if the dam caused a filling up at the head of the pond, and such filling caused the injury, the defendants were not liable *Held*, no error.
9. He also charged the jury that plaintiff could not recover for injury done to his land within the past twenty years, if other appreciable, though less, injury had been done to the same land, or other portions of the same, or contiguous, land, for more than twenty years. *Held*, not erroneous.

---

Before THOMSON, J., Union, October, 1879.

Action by Mathew S. Lynn against J. S. R. Thomson, Wade Fowler, and J. C. Spears for damages done to the plaintiff's

lands within the past twenty years by a dam which had existed for a century, and also for damages for injuries result-ing from the raising of the dam. The answer denied the injury and the raising, and alleged that if these lands were at all injured they had been injured as much or more for more than twenty years. The action was commenced August 14, 1877.

The opinion sufficiently states the facts upon the four points first considered by this court. There was a conflict of testi-mony as to the condition of plaintiff's lands for the sixty years preceding action brought, whether in better or worse condition, and whether injuries now done were or were not done more than twenty years ago. Expert witnesses differed as to the causes of injury, of the filling up of the creek, etc. There was also conflict as to the height of the dam built in 1869 as compared with other dams which preceded it, and as bearing upon this point there was a conflict as to where the head of the pond was at the first trial.

His Honor charged the jury that a man cannot, by our law, commence an action for overflowing his land until he is injured. When was plaintiff injured here? When the water began to sob the land from the channel; plaintiff could have sued when the land began to be in a sobbed condition. Though this condition may not have been apparent at first, still the question is, When did this sobbing begin? Whenever that began which the plaintiff calls the injury the right of action accrued. That from such time it is adverse possession. That if Hope or Thomson or anybody else was in possession of the use of the dam in this case for twenty years, they thereby ac-quired a prescriptive right to use a dam at same place, at same height, and to same extent as the one so used for twenty years. That if water was backed by this dam as far back as the cane-brake for twenty years, the dam-owners had an indefeasible right to keep it there, no matter what results followed. That mill-owners had rights as well as land-owners. That dam might say to the stream: You are going to fill me up with sand. That owners of dam could say: We have a right that you shall not fill us up with sand. That the owners of the dam

had a prescriptive right that the dam should not be filled with sand brought down in the stream above. That if land-owners above cleared and cultivated their lands, whereby sand was washed down into the creek and accumulated at the head of the pond, and thereby injured plaintiff's lands, that defendants were not responsible for such injury, although such accumulation would not have occurred in the absence of the dam. That if the waters expanded and were extended by accumulation of sand and not by act of defendants, then the jury must find for the defendants. That there was proof that the head of the dam had been at the same place for some forty years before the last trial. That prescriptive rights began to run in favor of dam-owners from time the land above was sobbed by water, so that injury accrued therefrom as against such land-owner. That the offer made by plaintiff and others to defendants, just before this action, to buy out the dam and mills and ten acres of land on each side of the creek, accompanied with the statement that if their offer was accepted it was their purpose to tear out the dam, was strong as an acknowledgment by parties making it of right of defendants to keep the dam as it then stood. He said to the jury, "Would you, gentlemen, raise your dam higher when persons were watching you? Would you do so and risk a lawsuit?"

The requests to charge made by plaintiff and refused by the judge were as follows:

4. That until appreciable injury to plaintiff's lands results, and thus a right of action arises, there can be no prescription in favor of the dam or its effects upon the water above. This he qualified by saying that it would be so in a new case, but that where a prescriptive right is acquired, to that extent it may be kept.

7. That twenty years of user affords a presumption of a grant of license or easement only to the extent and in the state to which there was enjoyment for the whole twenty years; and if any lands of plaintiff have been injured by back water, caused by the dam for the first time within twenty years before action brought for the damage to such lands, plaintiff is entitled to a judgment, although other lands of the plaintiff were

injured more than twenty years before action brought. This request in its first sentence was granted, but the remainder as asked was refused, and the jury were instructed that if the lands were contiguous and all belonged to one individual, that injury to one part was injury to all; but if in separate tracts, injury to one tract was not injury to the other tracts.

8. That prescription is only coextensive with the injury done—*tantum prescriptum, quantum possessum.* This request was granted, with the remark that a prescriptive right was gained to the extent of the possession, when the possession was of that character for which an action could be brought as before stated in this charge.

9. That if plaintiff's lands were injured by defendants' dam for a greater period of time than twenty years, and such injury ceased to exist for more than a subsequent period of twenty years, and the same or other injury again commenced within twenty years before action brought, that the prescription gained after the first twenty years was lost by non-user during the subsequent period of twenty years, and there is no prescription now. This request was granted, but qualified by the additional remark that there would be no non-user if the dam was used.

10. That the plaintiff had a right at any time to dig a ditch in his bottom lands to drain them; that if such ditch was dug and has been rendered useless by back water caused by defendants' dam within twenty years since, that plaintiff is entitled to his damages, if any, from such back-water, although the water may have been for more than twenty years thrown back by said dam as far and as high as when the ditch was rendered useless. This request was refused.

The following requests of defendant were granted:

1. If the jury find that the land now owned by plaintiff has been injured to some extent, however little, if apppreciable, for the entire period of twenty years next preceding the bringing of this action, then the fact that the land is now injured to a greater extent than before does not give the plaintiff the right to recover damages unless the greater extent of injury is caused by defendants' raising their dam, or the water

in the dam, by means other than ordinary repairs. This request was granted.

2. If the foregoing stated increased injury does exist, but defendants have not raised their dam, then this increase of injury does not entitle plaintiff to recover damages. This was granted.

6. In no event has the jury a right to give damages upon a finding that the removal of the whole of the dam would benefit plaintiff's land. This was granted.

13. If the jury are satisfied as last above, and that the owners of the dam, now owned by defendants, have, for twenty consecutive years, kept up a dam of the same height and kind as the present one, and that such a dam has been kept up to the present time, then the jury should find for the defendants. This was granted.

14. If the prior owners of defendants' dam did at any time acquire a prescriptive right to keep up a dam of the same height and kind as the present one, and such a dam has been kept up since then to the present time, the fact that plaintiff's land may at any time have been better fitted for cultivation than it was at the time his action was brought does not entitle him to a verdict. This was granted.

15. The prescriptive rights claimed by defendants when once acquired, cannot be lost by their dam having ceased to produce injurious effects for any interval of time after the right was acquired, the dam having remained of the same height in this interval. This was granted.

The exceptions suggest error in these charges made on defendant's request, and in his refusals to charge those above stated requested by the plaintiff. Exceptions to the charge itself, and to the rulings on points of evidence, are sufficiently stated in the opinion.

Mr. *R. W. Shand,* for appellant.

Messrs. *Rion & McKissick,* contra.

April 13, 1882. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON. This action was brought to recover damages alleged to have been done plaintiff's land by backwater from defendants' mill-dam. The jury found for the defendants on the last trial, from which this appeal comes. On the former trial they failed to agree. The plaintiff grounds his appeal upon numerous exceptions, nineteen in number, assigning errors of omission and commission, refusals to charge on request and in charges made. The appellant in the argument reduces these nineteen exceptions to nine points, one of which (the 7th) was abandoned at the hearing, as we understood. The respondent discusses the case under two heads:

1. The first of the nine heads of the appellant raises the question of the competency of an interrogatory propounded to a witness on the stand for plaintiff, and which was excluded by the judge. The premises involved in the case were situate in Union county, on Thickety and Gilky creeks. The witness on the stand was a resident of an adjoining county, Laurens. "He was asked by plaintiff what effect he had observed upon streams of water in Laurens county following the removal of dams?" The defendants objected, and the question was ruled by the judge incompetent. We think a general question of that kind was irrelevant. The matter under investigation was whether damage had been done to plaintiff's land, located on Thickety and Gilky creeks, miles away from the residence of the witness. Whether the lands on the streams in Laurens were similarly located with reference to those streams, as the plaintiff's land was in reference to Thickety and Gilky creeks, had not appeared; and, even if such had been the case, the question seems to us to be irrelevant. It is difficult to say distinctly what constitutes relevancy, so that a definite rule may be established by which the matter in every case may be at once determined. It must therefore be left in a great measure to the discretion of the presiding judge, subject to the right and privilege of the party to show the relevancy of the question when objected to. We have failed to be satisfied by appellant's argument, or by any authorities referred to, that the presiding judge was in error here.

2. David Smith, a witness for plaintiff, testified that Alex. Goforth was the builder of a new dam, erected in 1869, in place of an old one, and that Goforth was now dead. He was asked by plaintiff's counsel if Goforth, at or about the time this dam was completed, made any statement to the witness about the height of his dam. The question was objected to, and ruled incompetent. This was an attempt to bring into the case the declarations of one who was not before the court, either as a party or in any other way—declarations made without the sanction of an oath, and without an opportunity to defendant to cross-examine. If this had been admitted, its truth would not have rested on the credibility and character of the witness on the stand, but upon one who could not be put to the usual tests required. Unless it can be made an exception, to have admitted such declarations would have been in direct conflict with the general rule of evidence in reference to hearsay.

In questions of boundary hearsay is competent testimony, and the declarations not only of surveyors and chain carriers, but of other persons, will be admitted, under one of the exceptions to the general rule, excluding hearsay. The declarations of surveyors in the cases of *Coate* v. *Spear*, 3 *McC.* 229, and *Blythe* v. *Sutherland, Ib.* 259, relied on by the appellant, were admitted and properly admitted under this exception. But it would be straining the exception as to boundary lateral very far indeed to admit hearsay testimony as to the height of a mill-dam at a particular time on the ground of boundary vertical. Hearsay testimony has none of the safeguards of truth. We think the door for its admission has been opened wide enough by the exceptions already established, and we have no warrant to extend the doctrine further.

3. Davidson, a witness for the plaintiff, owning lands opposite on Gilky and Thickety creeks, below the plaintiff's, testified that when the Massey dam was built in 1852 he complained to Waddy Thomson, the then owner, now deceased (and through whom defendants derived title), that this dam was higher than the previous one, and that Waddy Thomson said, "Let it stand, and that he would bring it down to its former height when he built again." The next dam was the

Goforth dam, built in 1869. Plaintiff requested his Honor to charge, that if they believed Davidson's testimony, and that the Massey dam was raised, that a prescriptive right for the increased height did not begin to run until the Goforth dam was built. The judge refused.

It is true that an easement cannot be acquired by permissive use. On the contrary, it is founded upon adverse use. It is an enjoyment claimed and exercised as a right; and if, in this case, the witness Davidson had been the plaintiff for an injury to his land, upon such testimony, if believed by the jury, he might have urged with force the proposition contended for by appellant. The prescription as to his land could not have commenced so long as Thomson was exercising the privilege to overflow it by permission. But we do not see how this fact, if true, could protect the present plaintiff. He does not claim through Davidson, and there is no evidence that he gave Thomson permission to raise the dam either directly or indirectly.

4. A short time before action brought the plaintiff proposed to buy the dam, mills, and twenty acres of land of defendants, at $5000, saying the object in buying was to pull the dam down. His Honor charged that this offer "was strong as an acknowledgment of the right of defendants to keep the dam as it then stood." We do not see such error at law in this as to require redress from this court. This was not a charge upon the facts, and therefore an invasion of the province of the jury. The fact that the proposition to buy had been made was a fact proved by the plaintiff. It was admitted to be a fact in the case, and the judge in commenting on this fact stated to the jury his interpretation of its force and effect. The case of *Chandler* v. *Geraty*, 10 *S. C.* 308, referred to by appellant's counsel, was a case where it was held that a proposition of compromise made by a party to an action was properly excluded as testimony against him, it being the policy of the law to encourage compromises. But here this testimony was brought out by the plaintiff himself. He was responsible for its being before the jury. He made no motion, as we can see, to strike it out. And we cannot say that the construction

put upon it by the judge was so far wrong, as upon that ground, to require of us to prolong this litigation by ordering a new trial.

5. The appellant excepts to certain expressions used by the judge in his charge, to wit, to the following: "Would you, gentlemen, raise your dam higher when persons were watching you? Would you do so and risk a lawsuit?" These are objected to on the ground of conflict with the constitution, Art. IV., § 26, which forbids judges from charging on the facts. It is difficult to lay down an infallible and inflexible rule by the application of which it can be determined, in every case, whether this section of the constitution has been violated. A clear violation is where the judge decides a question of fact about which there is dispute, and so instructs the jury; but where there is no dispute as to the immediate fact testified to, and the question is as to the effect of such fact, it being susceptible of one or more inferences, we do not see that it would be an invasion of the province of the jury for the judge to point out to them the different conclusions which may be drawn, and the circumstances which might incline them to believe the one or the other, reserving his own opinion. We do not know, nor can we say, that the presiding judge in this case intended to do more than this by the questions which he propounded to the jury.

What the judge said as to there being *proof* that the head of the dam had been for twenty years at the same place, we do not think was in violation of his duty. He did not intend to take that fact from the jury and decide it himself, but we think he used the word proof in the sense of evidence.

6. It is objected that the judge instructed the jury that the use of a dam for twenty years gave a prescriptive right. This charge, without explanation, separated from its connection, and applied whether the use was adverse, permissive, or upon the party's own land, without doing injury to another until very recently before action, would be error; but, if adverse from the beginning, and giving a cause of action to another during all this time, it would be strictly in accordance with the settled law upon that subject. The judge, we think, intended this, because he used the following language: "Though this condition may not have been apparent at first, still the question

is, When did this sobbing commence? Whenever that began which the plaintiff calls injury, the right of action accrued. That from such time it is adverse possession." And then follow: "That if Hope or Thomson, or anybody else, was in possession of the use of the dam in this case for twenty years, they thereby acquired a prescriptive right to use a dam at same place, at same height, and to same extent, as the one so used for twenty years." So it is apparent, when the charge is taken as a whole, as it should be, and not in detached portions, that it is not subject to the exceptions presented.

7. We understand the seventh ground to be abandoned.

8 and 9. These appear to raise substantially the same question, to wit, that his Honor erred in holding that where an easement has once been gained by prescription, that new and different injuries to the servient property, or the rights of the servient party resulting from the use of the easement, cannot affect its enjoyment; that the easement will stand, notwithstanding the new and recent injurious consequences. We think this principle is a correct deduction from the character of easements, and the theory upon which they are maintained. An easement is founded upon a grant which is supposed to have been lost. The grant is understood to have been executed by the party over whose property and rights the easement has been acquired. The twenty years' adverse use is the evidence of the previous execution of the grant. The right to enjoy the easement is therefore conveyed to the grantee, and the grantor is ever afterwards estopped from denying its use by such grantee. The grantor is supposed to have parted with the right for a sufficient consideration, and must take the consequences, present or prospective. There was no error, therefore, in the ruling of the judge as to this point.

In fact, when the charge of the judge is read as a whole, with the direct propositions charged, and the qualifications to the various and numerous requests made of him, compared together, we think, standing as a whole, it was free from any such legal error as would warrant the interposition of this court.

It is the judgment of this court that the judgment of the Circuit Court be affirmed.