KENNERTY v. ETIWAN PHOSPHATE COMPANY.

1. After issue joined by answer and reply the action may be dismissed on defendant's motion if the complaint does not state facts sufficient to constitute a cause of action.

2. An original action on the equity side of the court for injunction to restrain a corporation from throwing off gases to the injury of plaint-

iff's person and crops, will not lie—there having been no judgment in the court of law establishing the existence of such private nuisance and measuring the damages.

3. The exception to this rule is found only in extreme cases, as where the thing itself is shown to be a nuisance *per se*, or where the mischief is irreparable and not capable of compensation in damages.

4. In compromise of an action pending at law and for valuable consideration, plaintiff released defendant from all claim or right of action on plaintiff's part for damages, past and future, resulting from the operation of defendant's works, and covenanted not to sue for damages arising from this cause. *Held*, that this prevented a suit in equity for injunction as well as an action at law for damages; and, moreover, that there can be no injunction without a legal right to damages.

5. Such release and covenant operated to estop plaintiff from doing what he bound himself under seal not to do.

6. Neither erroneous advice, nor error of judgment by plaintiff as to the future effects, nor the suggestions of defendant, one or all, would invalidate this covenant.

Before KERSHAW, J., Charleston, July, 1881.

Action by John Kennerty against the Etiwan Phosphate Company, commenced May 2, 1881. The opinion states the case.

Messrs. *Robert Chisolm, A. G. Magrath,* for appellants.

Messrs. *Campbell & Whaley, A. T. Smythe,* contra.

August 8, 1882. The opinion of the court was delivered by

MR. JUSTICE McGOWAN.—The plaintiff owns a farm near the works of the Etiwan Phosphate Company, which was incorporated for the purpose of carrying on the business of manufacturing commercial fertilizers. He alleges that in their business the defendants manufacture large quantities of sulphuric acid, which is one of the most pernicious gases in its effects upon vegetable and animal life; that the works are so constructed that sulphuric acid gas and other pernicious gases and noisome smells escape in the atmosphere and come over and on his farm and dwelling-house, to the injury of the crops and trees so as unpleasantly to affect him in his own person, both in his fields and home, and by so doing the plaintiff is irreparably damaged by the defendant corporation.

The complaint further exhibits an agreement and covenant which on or about June 10th, 1876, the plaintiff entered into with the defendant corporation to settle a case then pending at law between the same parties for damages from the same cause, which, after requiring that the defendant company should pay $2250.00 and the costs of that action, $179.00, provided as follows: "And further, upon the said company raising the duct or escape pipes to their trunk, through which the fumes and gases from the manufactory are let off into the air to an elevation of *twenty-five feet higher* than their present elevation, being fifty-six feet high; and further, upon said company undertaking to keep, and actually keeping at all times their escape-pipes through which their fumes are let off at the said measured elevation and at the same distance from the land of the said John Kennerty as they now are, and their said pipes to be always of such a diameter that no greater volume of fumes can be precipitated through the top of the pipes than at present into the air. *Thereupon the aforesaid terms and conditions being complied with by the company, and continued to be performed on their part, I, John Kennerty, do agree not to oppose opening of the verdict given in this case on the      day of April,* 1876 : *and at the option of the said company defendant will discontinue my present action against them, and release all claim of right of action for damages, past or future, against the said company,* that may accrue to the crops of the adjacent lands of plaintiff, Kennerty, and arising from the fumes or gases that may escape from the company's works into the air, *but for future damages resulting from this cause alone, and no other, do I release, and I consent not to sue the said company for damages arising from this cause, and from this alone, so long as the conditions herein stipulated to be kept by them are observed,*" etc. Appended to the contract was a receipt for the money agreed to be paid.

The plaintiff does not allege that the defendants have failed to perform any of the covenants to be by them performed. He does, however, allege that the danger of the injury above stated recurs with every season, and that he has no adequate

remedy at law, and prays an injunction against the defendant. An order was granted temporarily restraining the defendant from so using its works as to injure the plaintiff. It seems that an answer and a reply were filed, but without taking evidence, upon motion after notice, Judge Kershaw granted an order to dismiss the complaint upon the ground that "it did not state facts sufficient to constitute a cause of action." The parties disagreeing about the "Case" for the Supreme Court, the judge settled it by directing the answer and reply to be stricken out and only the complaint included. From this order the plaintiff appealed, and also from the order dismissing the complaint, upon the following exceptions:

1. Because in the pleadings in the case presented to the court, a cause of action was therein stated; which entitled the plaintiff to produce his proofs and be heard in support of his right to the relief asked for.

2. Because the defendant, having fully answered the complaint, admitted thereby a cause of action to be stated in the complaint; and could not, after such answer, move to dismiss the complaint on the ground that it did not set forth a cause of action.

3. Because his honor having read the pleadings in the case, the complaint, the answer and the reply, had before him a cause of action stated in the pleadings, that is, damage to the crop of the plaintiff by the wrongful act of the defendant; the answer of the defendant denying the damage, and pleading a release by the plaintiff from all actions for damage—past, present or future; and the reply of the plaintiff that the release relied on by the defendant was obtained under circumstances which did not entitle the defendant to the benefit of the defence, because of it set forth in the answer, should not have dismissed the complaint without full hearing.

4. Because the decree dismissing the complaint was made upon motion, not at the hearing of the case, and without opportunity to the defendant to sustain, by his proof, the averments of his complaint as to the damage he sustained; and to the release, as not giving the defendant the exemption from all suits for damages as claimed in the answer.

5. Because the complaint set forth damage by the defendant to the plaintiff in two modes; first, in that done to his crop by the fumes and works of the defendant; and next, because of the damage done by fumes and vapors escaping from the works of the defendant; making his residence, because of offensive smells, unwholesome and uncomfortable; and for such damage the release set up the defendant did not in terms profess to exclude every right of action; but by the limitation in its terms to damage done to the crops, did not affect the plaintiff's right to sue for a cause of action, sounding in damages, because of injury done to his residence and home, as such.

6. Because the decree dismissing the complaint would bar the plaintiff from any recovery against the defendant because of damage done to his crops, his property, his residence and home, his health, and his person because of a paper set up as a release; and excludes all evidence to prove that such paper, so called a release, was not binding on the plaintiff, and could not give to the defendant an exemption of liability for all damages, however sustained, and occasioned by the acts of the defendant willful or otherwise."

The appeal from the order "settling the case" was not argued here, and we regard it as properly abandoned.

The first four exceptions make the point substantially that after answer filed and issue joined it was too late to consider the case exclusively with reference to the allegations of the complaint; and that the judge should have allowed the plaintiff to prove the facts of the case put in issue. The objection was in fact an oral demurrer, under *the sixth* head of section 167 of the Code upon the ground that "the complaint did not state facts sufficient to constitute a cause of action."

The Code enacts that the only pleading on the part of the defendant shall be a demurrer, or an answer, and after setting out the grounds upon which alone a demurrer can be interposed, provides in section 171 that "if such objection be not taken by demurrer or answer, the defendant shall be deemed to have waived the same, excepting only the objection to the jurisdiction of the court, *and the objection that the complaint does not state facts sufficient to constitute a cause of action.*"

In accordance with this exception it has often been held, both in New York and in this State, that such objection may be made at any stage of the proceedings, even after issue joined and the case heard. *Southern Porcelain Manufacturing Co.* v. *Thew*, 5 *S. C.* 10 ; *Bowden & Earle* v. *Winsmith*, 11 *S. C.* 411 ; *Balle* v. *Moseley*, 13 *S. C.* 440 ; *Coffin* v. *Reynolds*, 37 *N. Y.* 640. In the last case cited it is expressly said : " It was clearly right to entertain the application at that stage of the case, since the code provides that the specific objection that the complaint does not state facts sufficient to constitute a cause of action need not be taken by answer or demurrer, but *is* available in any stage of the action."

All the other exceptions insist that the complaint did state facts sufficient to authorize the court to grant the injunction prayed for, and that the order dismissing the complaint was error. The principles involved are important and the consequences serious. It is not a small matter to embarrass or destroy an industry so useful as that of the Etiwan Phosphate Company, because of the consequences of operating their works in a legitimate business chartered by the State, upon their own land, and with no unlawful intent ; and on the other hand it is even more important to secure to every man the enjoyment of that which is a common right, the use of pure and uncorrupted air.

For the purposes of the case we must consider the statements of the complaint as true, and so considering them, was such a case made as entitled the plaintiff to the injunction prayed for ? First consider how the matter would stand if there had been no former action between the parties or covenant on the part of the plaintiff not to sue, but the action was an original proceeding of the plaintiff against the defendant for injunction. The matter complained of was that the works of the defendant company operated as a private nuisance, injuring the plaintiff in his person and in his property. The complaint was in the equity jurisdiction, not for past damages for corrupting the air, but for an injunction against the throwing off of such gases in the future, even if it resulted in the stoppage of the works.

The existence or non-existence of a nuisance was necessarily in-- volved in the question.

The Court of Equity is not the appropriate tribunal for the· trial of such an issue. In such case the general rule un-- doubtedly is that equity will not grant an injunction until the· legal rights of the parties are determined and the fact that a nuisance exists is established in a law court, which is the proper tribunal to decide such questions and measure the damages. The fact of damage is one which the defendant had a right to have passed upon by a jury, and the right of the plaintiff in case of success in that issue to have an injunction against the continuance of the nuisance was supplementary thereto. It may be conceded that the facts stated would constitute a cause of action at law for damages, but it does not necessarily follow that they constitute a cause of action in equity as an original proceeding for the special relief of injunction.

" The equity for an injunction attaches only on an admitted or legally adjudged right in the plaintiff, admitted or legally adjudged to be infringed by the defendant. The existence of the right and the fact of its infringement must be tried, if dis- puted, in a court of law, and therefore if the plaintiff resorts to equity in the first instance he should move forthwith for an interlocutory injunction to protect his alleged right until de- cree, and thus give an opportunity for directing the trial at law, so that when the cause comes on for hearing it may be ready for immediate adjudication. When a motion for an in- terlocutory injunction is made, the court, having regard to the extent of *prima facie* title shown, the probability of mischief to the property, *and the balance of inconvenience on either side,* will either grant the injunction accompanied by a provision for putting the legal right into an immediate course of trial, or will send the parties to law, directing the defendant to keep an account, or will merely retain the bill with liberty to the plain- tiff to proceed at law." *Adam's Equity,* 497 ; *Wilson* v. *Cohen, Rice's Ch.* 83. The complaint in this case neither alleged that the nuisance charged had been admitted or legally ad- judged, nor that an action was pending in a law court, nor did it ask leave to make up an issue to try the question.

27

It is true to this general rule there are exceptions. The court as an original matter will intervene in extreme cases, for example when the thing itself is a *nuisance per se*, or the mischief is irreparable and not susceptible of compensation in damages. The doctrine as we understand it is stated in the case of the *Mohawk Bridge Co.* v. *The U. and S. R. R. Co.*, 6 *Paige*, 563. "The principles upon which the court should proceed in granting or refusing relief by injunction in cases of this kind are correctly laid down by Lord Brougham in the recent case of *The Earl of Ripon* v. *Hobert (Cooper's Rep. temp. Brougham*, 343). If the thing sought to be prohibited *is in itself a nuisance*, the court will interfere to stay irreparable mischief, where the complainant's right is not doubtful, without waiting for the result of a trial. But where the thing sought to be restrained is not in itself noxious, but only something which may, according to circumstances, prove to be so, the court will refuse to interfere, *until the matter has been tried at law by an action;* though in particular cases the court may direct an issue, for its own satisfaction, where an action could not be brought in such a form as to meet the question."

It was not alleged that the operation of defendant's works authorized by the Legislature was in itself a nuisance, " but only something which may according to circumstances prove to be so," nor was it alleged that the right had been decided at law, and it is at least doubtful whether the facts stated, under the circumstances, made out such a case of irreparable mischief as required the judge, without reference to a trial at law, to grant the injunction.

But there can be no doubt, when we consider the allegation of the complaint that there had been a former action at law by the plaintiff against the defendant for the same causes, which action the plaintiff had compromised and for valuable consideration *covenanted with the defendant to discontinue, and to release* all claim or right of action for damages *present* or *future* against the said company arising from the fumes or gases that may escape from the company's works in the air; "*but for the future damage resulting from this cause and no other, do I release &c.: and I consent not to sue the said company for*

damages arising from this cause, so long as the conditions herein stipulated to be kept by them, are observed."

*The plaintiff agreed* to release and "not to sue for future damage arising from the fumes or gases that may escape from the company's works in the air, etc.," the identical thing he is now seeking relief against by *way of injunction*. It seems to us that considering the whole of this agreement together, and the circumstances under which it was executed, the fair construction of it is, that the parties intended to bar all judicial proceedings for the same cause—a suit in equity for injunction as well as suit at law for damages. We do not suppose that the parties had in view the difference between an action at law and a proceeding in equity, and that in providing against the former they intentionally omitted to provide against the latter, which would enable the party covenanting against future suits for damages, to accomplish his purpose only the more effectually in *another way, by injunction*. The qualification in the covenant has reference to *the cause*, and not the objects *to be affected* by it "for damages arising from this cause and this alone."

But if we restrict the agreement to the technical meaning of the terms used, the covenant not to sue for *future damages* incidentally affected the remedy by injunction in the equity jurisdiction, for the reason that in any and every view there can be no injunction without the legal right to rest upon. Injunction is a matter of grace and without the legal right as a foundation will not be granted; "Equity will not grant an injunction for the protection of a naked legal right, which plaintiff and those under whom he claims have covenanted not to exercise." *Bosby* v. *McKim*, 7 *Harr & John*, 468. In that case Justice Dorsey said "The annals of judicial proceedings do not furnish a case, where a court of Equity has granted a perpetual injunction to a plaintiff to protect him in the enjoyment of a naked legal right, which he and those under whom he claims, have by the most solemn deeds stipulated not to exercise."

But it is urged that the agreement was not binding on the plaintiff; that it was executed at the suggestion of defendant upon erroneous advice, and so far as it undertook to covenant

against suing *for future injuries was illegal and void.* No allegation is made in the complaint that it was obtained by misrepresentation or fraud. It would not be enough to invalidate the covenant, if it was executed upon erroneous advice or at the suggestion of the defendant, or that the plaintiff was mistaken in his judgment as to the effect of the changes required to be made in the works, or from all these causes combined. The plaintiff entered into it deliberately, received the consideration in money, and acquiesced in it for a number of years.

Without entering into the learning with which the point was argued at the bar, whether a covenant not to sue for *future injuries* from a known cause in existence is good, or without considering the precise difference between a covenant not to sue, and the conveyance of an easement or an executed license, it is enough for us to say, that there can be no doubt that the plaintiff is *estopped from doing what he covenanted under seal he would not do.* Whilst compromising a suit then pending for past damages arising from a certain cause, the plaintiff, for value received, covenanted not to sue again for injuries from the same cause if they should arise in the future. When such injuries do afterwards arise as alleged he cannot disregard his covenant. To allow him to do so would operate as a fraud.

It may be true that as a general rule a *thing in the future* cannot be released, but a covenant for a consideration not to not to do a particular thing, such as building a house, or in some uncertain emergency to seek legal redress, will be enforced in order to avoid circuity of action and upon the principle of estoppel. As was said by Chief Justice Spencer in the case of *Chandler* v. *Herrick,* 19 *John,* 134: "It is well settled that a covenant never to sue an obligor may be pleaded as a release to avoid circuity of action." Covenant not to sue, if it convey or pass no present right, is an agreement to pass it when it occurs; like a covenant for future assurances, it is a warranty that the expressed intention shall not be defeated by the grantor or his privies. *Big. Est.* 333.

The judgment of this court is that the judgment of the Circuit Court be affirmed.