**J. Abe HILTON, Appellant,**

v.

**DUKE POWER COMPANY,** a corporation organized and existing under the laws of one of the states of the Union, Appellee.

**No. 7546.**

United States Court of Appeals
Fourth Circuit.

Argued Jan. 10, 1958.

Decided April 1, 1958.

Richard E. Richards, Lancaster, S. C. (Richards, Caskey & Richards, Lancaster, S. C., and H. Simmons Tate, Jr., Columbia, S. C., on brief), for appellant.

Carl Horn, Jr., Charlotte, N. C., and Douglas McKay, Columbia, S. C. (W. S. O'B. Robinson, Jr., Charlotte, N. C., on brief), for appellee.

Before SOPER and SOBELOFF, Circuit Judges, and STANLEY, District Judge.

SOBELOFF, Circuit Judge.

A South Carolina landowner's rights growing out of damage to his lands by the maintenance of a neighboring dam are before us in this appeal.

In 1919, Wateree Power Company, in the exercise of its right of eminent domain, acquired land and built a dam on the Wateree River to a height of 212 feet above sea level. In 1925 the dam was raised to 218 feet, and at all times since then the impounded waters have been maintained at that level. The defendant, Duke Power Company, acquired the dam and lake, and all appurtenant rights in 1927.

The plaintiff's lands lie twelve miles to the north and upstream from the dam near Liberty Hill, South Carolina. They consist of four contiguous tracts aggregating approximately 2,000 acres. They extend for a distance of two miles and are traversed by a Wateree River tributary, known as Beaver Creek, and its five branches.

Before the erection of the dam, the plaintiff, J. Abe Hilton, contends, the natural flow of the waters provided ample drainage, and the same conditions continued for a number of years after the dam was built. Still waters, in the lake formed behind the dam, however, caused silt to accumulate in Beaver Creek and its branches. The silting continued, and gradually the creek banks, which had averaged six to eight feet, were diminished so that there were no banks on the creek or its branches over a foot high. Consequently, beginning with the southernmost portions of plaintiff's lands, those nearest the dam, the creek and its branches overflowed, depositing water and silt.

Hilton brought his action on September 1, 1955, in a South Carolina state court, but the defendant, a New Jersey corporation, had the case removed to the United States District Court for the Eastern District of South Carolina. When suit was filed, over 200 acres of Hilton's land had become unfit for cultivation or pasturage.

Issues and Proceedings in District Court

The plaintiff's case was predicated upon two theories: 1) that the invasion of his land by water and silt constituted a continuing trespass by Duke; 2) that the dam and lake were being maintained negligently, and that the injuries which the plaintiff suffered could be abated by dredging the land under the impounded waters and Beaver Creek.

Duke Power Company interposed a general denial that Hilton's lands had suffered any injury since the erection of the dam, but added a number of legal defenses. It contended that having maintained the present level of the impounded waters for more than twenty years, it had acquired a prescriptive right; and also that plaintiff's cause of action had accrued more than six years prior to the commencement of the suit and was therefore barred by limitations.

Duke Power contended, moreover, as to the Hough tract, the southernmost of the four owned by the plaintiff, and nearest the dam, that plaintiff's father, and predecessor in title, obtained a judgment in 1917 which bars the present action. As to the plaintiff's land lying immediately north of the Hough tract, known as the Winkler tract, a similar defense was interposed, based upon a deed executed in 1921 by Mrs. Sallie Winkler, the plaintiff's predecessor in title. Still another defense rests upon a release executed by the plaintiff and his parents in 1944. This particular defense pertains to three of the plaintiff's tracts of land, namely the Hough tract, the Winkler tract adjoining it, and the tract adjoining the Winkler tract to the northwest, known as the Hilton Home Place.

The case was tried before a jury, and at the close of all the evidence, the Judge gave a full and comprehensive charge upon all of the above issues. Before the charge the plaintiff withdrew any claim for damages arising out of the Hough tract.

The jury were told in substance that Mrs. Winkler's deed operated to release the defendant for all "foreseeable" injuries to her land and that Hilton acquired her land subject to Duke's rights under the release. They were also instructed that the release executed by the Hiltons in 1944 "extinguished every existing right that the plaintiff may have had against the defendant on account of the maintaining of the lake in question," and that this included such future conditions as were "reasonably foreseeable as natural consequences and results of the impounding of that water as it was then."

Finally as to the defendant's claim that the entire action is barred by limitations, the District Judge charged the jury that, "the right to sue arises when injury occurs. If future injury or damage is reasonably apparent and reasonably estimable, an action for total damages will arise thereon. And such an existing complete cause of action could not be divided so that the claimant might maintain successive suits for damages. * * If, however, * * * the nature of the injury complained of, by reason of the maintenance of the nuisance or claimed nuisance is such that only present damage, present and prior damage, can be reasonably ascertained and estimated, and future damage can not be ascertained with reasonable accuracy, or the result reasonably estimated, then successive actions may be brought to recover successive damages as they become apparent and effective." The jury were instructed that the applicable statute of limitations is six years.

A verdict was returned for the plaintiff in the amount of $5,000, but the Court later granted defendant's motion for a judgment N. O. V.

In the District Judge's order, which embodies a discussion of his reasons, he held that there was no evidence of negligence on the defendant's part and no evidence that the nuisance could be practicably abated by dredging as claimed by the plaintiff; "that silting at points where natural streams flow into the lake is a natural and usual occurrence"; that the silting began to injure the plaintiff's land six to twelve years before this action was begun; and that therefore the plaintiff's recovery is barred.

### Limitations and Nature of the Action

■■ Although its dam is constructed and maintained under proper governmental authority and "in the most skillful manner," a power company will nevertheless be liable if the dam is the direct and proximate cause of injury to neighboring property. This rule of absolute liability has been formulated by the Supreme Court of South Carolina as an application of the self-executing State constitutional provision that private property shall not be taken for public use without just compensation. McDaniel v. Greeneville-Carolina Power Co., 1913, 95 S.C. 268, 78 S.E. 980, 981, 6 A.L.R. 1321; Constitution of the State of South Carolina (1895), Art. 1, Sec. 17. While the right is constitutionally created, it is nevertheless settled law that the six-year South Carolina statute of limitations for damage or injury to real estate (South Carolina Code (1952), Sec. 10–143) "is a statute of repose, affects the remedy, not the right," and may operate to bar recovery by a neighboring landowner who has suffered injury from the maintenance of a dam. Webb v. Greenwood County, 1956, 229 S.C. 267, 92 S.E.2d 688, 694.

■ The effect of the statute of limitations and the extent to which it is applicable depend upon the nature of the cause of action and the time when it accrues. The South Carolina rule is that there is a taking within the meaning of the constitution, and consequently an accrual of a right of action, when "neighboring real estate, belonging to a private owner, is actually invaded by superinduced additions of water, earth, sand or other material * * * ." Milhous v. State Highway Dept., 194 S.C. 33, 8 S.E. 2d 852, 854, 128 A.L.R. 1186, quoting 10 R.C.L. 70. A neighboring landowner, however, acquires no rights against the owner of the dam and limitations do not begin to run until an actual injury oc-

curs. Lynn v. Thomson, 1881, 17 S.C. 129; McDaniel v. Greenville-Carolina Power Co., 1913, 95 S.C. 268, 78 S.E. 980, 6 A.L.R. 1321.

■ Once *some* actual injury is suffered, however, if the cause is permanent, non-negligent, and not subject to abatement, a single right of action accrues, in which the landowner must seek recovery for both past and future damages. Rice Hope Plantation v. South Carolina P. Serv, Auth., 1950, 216 S.C. 500, 59 S.E.2d 132, 140; Webb v. Greenwood County, 1956, 229 S.C. 267, 92 S.E.2d 688.[1]

But the right to future damages, and the corresponding obligation to seek them in a single suit, are not automatic. The answer depends upon whether the "permanency and extent" of the prospective injuries are, or should be, known to the landowner. Webb v. Greenwood County, 1956, 229 S.C. 267, 92 S.E.2d 688, 695. The rule has twin objectives. The first is to protect defendants against the harassment of successive suits in circumstances where a single action could fully adjudicate the rights of the parties. The other, equally important, is to avoid the injustice to plaintiffs of having limitations begin to run against them before their right to sue has matured.

■ If the existing injury must necessarily continue or increase, and if the amount of the damage can be determined or estimated, the cause of action as to future damage accrues at once. Webb v. Greenwood County, 1956, 229 S.C. 267, 92 S.E.2d 688. 56 Am.Jur., "Waters," Sec. 443, p. 858. Cf. Commercial Drilling Co. v. Kennedy, 1935, 172 Okl. 475, 45 P.2d 534.

■ Whether the prospective injury is subject to reasonable estimation may involve consideration of complex factual data, and the question is ordinarily a proper one for the jury. Annotation: "Limitations—Overflow of Land," 5 A.L.R.2d 302, 328. See: Fletcher v. City of Altus, 1941, 188 Okl. 342, 108 P.2d 781, 783. The Supreme Court of South Carolina, in a condemnation case with facts somewhat similar to those before us, declared the principle as follows:

"Whether the ponding of water in a given locality is or is not reasonably certain to cause the adjoining lands to become unhealthful as a place to live depends upon many and varied facts and circumstances. It is a matter of common knowledge that, in some cases, it does, and in others it does not. Therefore each case must be left to the jury to be decided upon its own facts and circumstances." Lockhart Power Co. v. Askew, 1918, 110 S.C. 449, 96 S.E. 685, 687.[2]

■ If the injury to neighboring lands is caused by negligence, or if the cause is abatable, then there arises a continuing cause of action, and while limitations begin to run at the occurrence of the first actual damage, the landowner may at any time recover for injury to his land which occurred within the statutory period. Conestee Mills v. City of Greenville, 1931, 160 S.C. 10, 158 S.E. 113, 75 A.L.R. 519; Lawton v. Seaboard Air Line Ry., 1906, 75 S.C. 82, 55 S.E. 128.

■■ We have made a close examination of the record in this case and are convinced that the District Judge was correct in ruling that there was no evidence of negligence on the defendant's part; that the injury to the plaintiff was brought about by a permanent, non-

---

1. Two early South Carolina decisions relied on by the plaintiff are Fewell v. Catawba Power Co., 1915, 102 S.C. 452, 86 S.E. 947, and Sutton v. Catawba Power Co., 1916, 104 S.C. 405, 89 S.E. 353. These cases may possibly be distinguishable on their facts, but in so far as they are inconsistent with the more recent expressions of the Supreme Court of that state, they have been impliedly overruled.

2. There is nothing in the case of Webb v. Greenwood County, 1956, 229 S.C. 267, 92 S.E.2d 688, which conflicts with this view. There the trial judge, sitting without a jury, found as a fact that, under the circumstances (the daily release of water upon the plaintiff's lower land), continuous injury was reasonably foreseeable and gave rise to a single cause of action which initiated limitations as to future as well as past damages.

abatable cause; and that dredging the waters to remove the silt would not be practicable. The principle distilled from the South Carolina decisions, which we have cited, is this: if an actual injury amounting to a taking occurs, suit must be brought within the period of limitations by the property owner not only for the actual injury that has occurred but also for any additional injuries which were foreseeable and estimable when the taking occurred. Recovery may subsequently be had for additional injuries which were not foreseeable and estimable when the taking occurred if suit is brought within the period of limitations after such injuries have been realized. The new suit would, of course, cover all future damages foreseeable at the time of the trial.

### Duke's Water Rights

█ Highly pertinent to the applicability of limitations are the water rights which the defendant claims it acquired through condemnation, easement, and release. As long as the damage is confined within the scope of the defendant's water rights, there is no right to initiate an action, the prerequisite for the running of limitations. 34 Am.Jur., "Limitation of Actions," Sec. 113, p. 91.

#### A. *The 1917 Condemnation.*

While the plaintiff has renounced his claim for damages to the Hough tract, what occurred there has relevance with respect to limitations and the right to recover for prospective injuries to his three other tracts contiguous to Hough.

In 1917, before the erection of the Wateree dam, plaintiff's father, W. Z. Hilton, together with Mrs. Belle Watson, owned the Hough tract. Having decided to build the dam, Wateree Power Company, exercised its power of condemnation and acquired an easement consisting of "all the water flowage and riparian rights to, in and upon and over, including the right to back, raise, pond or flood the waters of the Wateree River and its tributaries in, upon and over * * * so much of the lands of the defendants as is set out upon the plat * * *" filed

with Wateree's petition which describes 220 acres of the 340 acre Hough tract. For this right, the owners of the land were awarded $4,502.

The records of the condemnation do not show that the Wateree Power Company intended, at that time, to build the dam to its present height of 218 feet. We are not at liberty to assume, in the absence of more adequate record or other evidence, that it condemned more than contemplated as necessary for the dam built shortly after the condemnation to a level of 212 feet.

█ It is true that as long as the dam remained at the 212 foot level, the right acquired by the power company included damage to the residue of the Hough tract that might accrue from the proper and reasonable use of the right granted. Nunnamaker v. Columbia Water-Power Co., 1896, 47 S.C. 485, 25 S.E. 751, 34 L.R.A. 222. But when the dam was raised in 1925, resultant additional injury to the residue of the Hough tract was not covered by the earlier award, and the raising of the dam constituted a new taking of property for which the power company was liable to pay just compensation. White v. Southern Ry. Co., 1927, 142 S.C. 284, 140 S.E. 560, 57 A.L.R. 634. See: Georgia Power Company v. Moore, 1933, 47 Ga.App. 411, 170 S.E. 520. Cf. Reid v. Courtenay Mfg. Co., 1904, 68 S.C. 466, 47 S.E. 718. Plaintiff, Abe Hilton, acquired the Hough tract in 1946 from his father.

#### B. *The 1921 Deed.*

Bordering the Hough tract on the north, as we have seen, is the 570 acre Winkler tract, purchased by the plaintiff from Mrs. Sallie K. Winkler in 1940.

█ The same rule applicable to the 1917 condemnation (in respect to the legal effect of raising the dam), applies to a deed executed by Mrs. Winkler in 1921. Just as the 1917 condemnation did not finally settle the rights of the parties as to the Hough tract, so also is this deed inconclusive as to Duke's water rights over the Winkler tract. In consideration of $1,000 Mrs. Winkler granted to

Wateree "All the water, flowage and riparian rights, privileges, and easements in, to, upon and over, including the right to back, raise, pond or change the flow of the Wateree River and its tributaries upon, over, or away from * * *" a 16.9 acre portion of her tract. Mrs. Winkler also released Wateree "from all damages and claims for damages arising or in any wise growing out of the use and exercise of the above described rights, privileges and easements, in the past and present, as well in the future." Here too the 1925 raising of the dam constituted a new taking not within the scope of the rights acquired by Wateree. White v. Southern Ry. Co., 1927, 142 S.C. 284, 140 S.E. 560; Georgia Power Company v. Moore, 1933, 47 Ga.App. 411, 170 S.E. 520.

C. *The 1944 Release.*

However, the plaintiff, his father, and his mother, signed a release to the defendant in 1944, for which they received $500, and it becomes necessary to determine the effect of this document. The releasers were then the owners of three of the four tracts in issue here. The plaintiff owned the Winkler tract, and the Hilton Home Place which consists of 570 acres on the northwest boundary of the Winkler tract. W. Z. Hilton, the father, still owned the Hough tract.

The instrument recites that the three Hiltons "fully release and forever discharge the Duke Power Company * * from any and all claims, demands, actions or rights of action of every nature whatsoever, now existing or hereafter to arise, for or on account of the following, to-wit: In full settlement of suit of Abe Hilton vs. Duke Power Co. now pending in Court of Common Pleas, Kershaw County, S. C., for loss and damages account of mosquitoes, impounded water, backwater or otherwise at or near Liberty Hill, S. C. Also in full settlement of all claims for loss and damages sustained by Abe Hilton, W. Z. Hilton and Mrs. W. Z. Hilton account of or growing out of mosquitoes, impounded water, backwater or otherwise at or near Liberty Hill, S. C."

The 1944 release, according to the defendant, bars the plaintiff's claim for *any* damages to the Hilton Home Place, Winkler tract, and Hough tract.

It is the plaintiff's position that the 1944 release was primarily in settlement of the Hilton's complaints then that mosquitoes were being bred in the impounded waters and that future injuries of the kind which subsequently occurred were not within the contemplation of the parties when the broad language was inserted in the instrument.

In his charge to the jury, the Judge construed the release as extinguishing every existing right that the plaintiff may have had against the defendant in 1944, on account of the maintenance of the dam in question. He also interpreted the instrument as covering any such future conditions as were reasonably foreseeable as natural consequences of the impounding of the water as it was then. What future injury was reasonably foreseeable when the release was given was left to the jury as an issue.

▆▆ ▆▆ We find no error in the Judge's construction of the release. See: Gardner v. City of Columbia Police Department, 1950, 216 S.C. 219, 57 S.E.2d 308, 310. Cf. Kennerty v. Etiwan Phosphate Co., 1881, 17 S.C. 411. It is a general rule, well established, that "the construction of the release as to the actual intent of the parties presents a question of fact to be determined from the surrounding conditions and circumstances, construed with reference to the amount of consideration paid and the language of the release itself." 45 Am.Jur., "Release," Sec. 28, p. 692.

D. *The Sanders Tract.*

The Sanders tract, the northernmost of the four tracts of the plaintiff, which is contiguous to the Hilton Home Place, was not bought by Abe Hilton till 1948. There are, in the record, no releases or flowage easements granted by either Hilton or any of his predecessors in title which relate to this 504 acre tract. However, the foregoing discussion of the interplay of limitations and the 1944 release is helpful in arriving at the rights

of the parties in the Sanders tract, to be treated later.

## The Injury to Plaintiff's Lands

In the trial of the case the evidence of damage to the plaintiff's land was developed with an emphasis upon the several branches of Beaver Creek along which the damage arose. For this reason one reading the record experiences some difficulty in determining the exact conditions prevailing in each of the several tracts at particular times. However, it is apparent that the witnesses testified with charts before them which the jury looked at as the witnesses spoke. These charts indicate the boundaries of the several tracts and the jury could relate the damage to each of them. The jury was also given the details of the course of progress of the damage within the tracts so that they had before them the necessary information to interpret the release and to apply the rule of limitations in accordance with the Judge's charge.

The Miles Evans Branch is identified in the record as being the southernmost branch on the eastern side of Beaver Creek, and it traverses only the Hough tract. Hilton stated that damage to this land through seepage and silting began there approximately 10 to 12 years before the trial (8½ to 10½ years before suit was filed).[3]

Directly above the Miles Evans Branch, also on the east side of Beaver Creek, are the Yancey Mingo and Fred Eally Branches, both of which flow through the Winkler tract. Plaintiff claimed that damage began on the Yancey Mingo 7 to 9 years before trial (5½ to 7½ years before suit), and that damage on the Fred Eally started 7 to 8 years before trial (5½ to 6½ years before suit).

To the north of the other three branches and on the west side of Beaver Creek, the Gin House Branch and the lower part of Duke's Branch run through the Hilton Home Place. Hilton testified that injury began 6 to 8 years before trial (4½ to 6½ years before suit) on the Gin House Branch, and 6 to 7 years before trial (4½ to 5½ years before suit) on Duke's.

Only the upper part of Duke's Branch flows through the Sanders tract, and none of the other branches. Referring specifically to that portion of Duke's Branch, Hilton testified that "it's filled completely up and water spread all over the ground, and there are places where there is still some banks to it." Thus, controverting the defendant's assertion, Hilton testified to some actual damage to the Sanders tract from the overflow of Duke's Branch, all of which occurred less than six years before suit. Even the lower part of Duke's Branch, traversing the Hilton Home Place did not begin to overflow before the period of limitations.

## Issues for the Jury

Presented with times and locations of the damages to Hilton's lands, and left to decide what injury was contemplated in the 1944 release, it was within the jury's province to determine 1) the time at which the plaintiff first suffered actual legal injury so that a cause of action would accrue, and 2) if there was such actual injury, to make a finding as to the foreseeability and estimability, six years before suit, of increased future damage.

Despite the complexities in the record concerning the creek branches, the tracts, and the conditions prevailing when the 1944 release was executed, there are several grounds upon which the jury could properly, under the instructions, have based its verdict for the plaintiff:

1. The jury could have concluded that the release of 1944 contemplated the injury which ensued to the three tracts covered by that instrument, and that no award was permissible after 1944 in respect to these

---

3. The trial of the case began on March 6, 1957, nineteen months after the complaint was filed. The plaintiff's testimony as to the times when damage to his land along the several branches began was in relation to the time at which he was testifying.

tracts; that, therefore, the first compensable injury occurred when the upper part of Duke's Branch, lying on the Sanders tract, overflowed sometime within the six-year period before suit, for it is clear that foreseeable damage can be claimed only in conjunction with a claim for actual damage; and that as no claim was maintainable longer than six years ago in respect to damage to the Sanders tract, the plaintiff was entitled in this suit to damages, including all foreseeable future injury to that tract.

2. The jury could have concluded that the 1944 release did not contemplate the *total* damages suffered upon the Hough, Hilton Home Place, and Winkler tracts, but that it contemplated damage to a lesser extent than the seepage which later occurred, because the full progress of the damage was not foreseeable in 1944; that injury from seepage and overflow not contemplated by the release occurred within the six year period; and that the single cause of action which the plaintiff is entitled to maintain is, therefore, not barred by limitations.

3. A third alternative was open to the jury. They could have found that the 1944 release did not contemplate *any* of the damage which later developed on the three tracts covered by the release; that while the cause of action for actual injuries before the six-year period preceding the suit is barred, the permanency and extent of the prospective injuries could not have been known to the plaintiff as early as six years before suit with sufficient definiteness to permit a recovery (and hence to require suit) for future damages; and that the plaintiff is therefore entitled to recover for them now.

 Under any of these theories, the $5,000 verdict returned by the jury is supportable. Nor is it excessive. The plaintiff's evidence was that the overflow of an acre of his land diminishes its value by $100 and, in reviewing the granting or denial of a motion for judgment N. O. V., we must keep in mind the well established rule that the evidence must be construed most favorably in support of the verdict. Cline v. Southern Ry. Co., 4 Cir., 1940, 115 F.2d 907, 909; George D. Horning, Inc. v. McAleenan, 4 Cir., 1945, 149 F.2d 561, 565.

Conclusion

We are therefore of the opinion that the Judge was correct in the first instance in submitting the case to the jury. He was also correct in his charge. When dealing with a small lot, the evidence of damage to any part of it might make it fairly obvious that the rest will be similarly affected. On the other hand, when damage to a small part of a tract that spreads over a wide area is discerned, it may be less certain that damage will eventually affect the remainder of the tract. What may be so obvious in the first case as to warrant a binding instruction may in the second present a question appropriate for submission to a jury.

It would impose an obligation too stern for the practicalities of justice to declare as a matter of law that, regardless of extent, range, topography, and other characteristics of his land, a plaintiff is always charged at the first appearance of damage with a foresight of its ultimate spread.

Where, as here the topography of plaintiff's extensive tracts is a two-mile network of bottomlands, hills, and streams; and where the defendant itself has introduced the testimony of members of the party which conducted the initial survey for the dam in 1917, some of them engineers, to the effect that plaintiff's land, even up to the trial, had suffered *no* damage whatsoever, we cannot say that reasonable minds could not differ as to the foreseeability and certainty of future injuries.

Being of the opinion that judgment N. O. V. was not warranted, the verdict should be reinstated and judgment entered thereon.

Reversed and remanded for reinstatement of the jury's verdict and entry of judgment thereon.