Loy Ree B. Marlowe **BALLAM**, Plaintiff,

v.

**UNITED STATES of America,**
**Defendant.**

Civ. A. No. 82–127–2.

United States District Court,
D. South Carolina,
Florence Division.

Dec. 6, 1982.

2. In fact, plaintiff previously sought a 6(e) order from Judge Ditter who refused to issue one.

H.F. Bell, Chesterfield, S.C., for plaintiff.

Henry Dargan McMaster, U.S. Atty. by Glen E. Craig, Asst. U.S. Atty., Columbia, S.C., for defendant.

SPEARS, District Judge.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

On this the 1st day of December, 1982, the Court, having heard and duly considered the evidence and the arguments of counsel finds and concludes as follows:

### FINDINGS OF FACT

(1) Plaintiff, Loy Ree Ballam, a resident of the State of South Carolina, owns real estate adjacent to the Atlantic Intracoastal Waterway (AIWW), with a frontage thereon of approximately one hundred thirty-six (136) feet.

(2) The AIWW was constructed by the defendant, United States of America, during the mid 1930's and early 1940's. The project authorization provided that the local interests would furnish free of cost to the defendant, rights-of-way of sufficient width for a canal prism and for the disposal of spoil.

(3) Pursuant to the conditions of the project authorization, the State of South Carolina obtained the requested rights-of-way and easements, and conveyed them to the defendant.

(4) By deed, dated September 10, 1931, the plaintiff's predecessor in title, granted to the State of South Carolina a perpetual easement to enter upon, excavate, cut away, and remove any and all of a strip of land three hundred twenty (320) feet in width and approximately seventeen hundred (1700) feet in length, for the purpose of the construction and maintenance of the AIWW. Plaintiff's property is a part of the original 1700 feet granted to the government by the plaintiff's predecessor in title.

(5) The deed from plaintiff's predecessor in title to the State of South Carolina contained the following release:

The grantor does hereby waive and release the grantee, its successors and assigns and its or their officers, agents, servants, and contractors from any and all claims for damages which may result from the construction and maintenance of the waterway and the deposit of spoil or other matter as hereinabove stated; this waiver and release of damages being intended as a continuing covenant which shall run with the land and be binding upon the grantor and on his, her, its heirs, successors and assigns.

(6) The easement so granted to the State of South Carolina was included in the deed from the State of South Carolina to the defendant.

(7) Since the construction of the AIWW, it has been maintained by defendant, acting through the Corps of Engineers, Department of the Army, an agency of the defendant.

(8) As a part of the maintenance of the AIWW, the defendant has dredged the channel of the waterway every 2 or 3 years. Dredging consists of removing the shoals (sandbanks or sandbars) caused by bank soil flowing into the waterway, and removing any trees, limbs, or similar debris that may have entered the AIWW. This dredging is done in order to aid navigation in the waterway.

(9) The project authorization provided for a channel eight (8) feet deep and seventy-five (75) feet wide at the bottom. Around the year 1941 the channel was enlarged to be twelve (12) feet deep and ninety (90) feet wide. As enlarged, the top of the AIWW, in the area of plaintiff's property, was approximately 235 feet in width, leaving some eighty-five (85) feet of the 320 foot easement unused, fifty-three (53) feet of which was on the Ballam side of the AIWW. Thus, at that time, the AIWW along plaintiff's property was still within the easement granted to the defendant.

(10) Subsequently, there was erosion of the remaining fifty-three (53) feet of the easement, and ultimately the erosion extended into plaintiff's adjoining property. Within the last seven years, plaintiff's property has been eroded by approximately four (4) feet on the West and twenty-nine (29) feet on the East (a total of 2000 square feet or .046 acre), and the erosion has not become stabilized.

(11) The primary cause of the erosion to the plaintiff's property is wave wash from vessels using the AIWW. The sandy soil on plaintiff's property is such that the erosion is a continuous process and unless remedial measures are taken, her property will continue to erode in the future.

## CONCLUSIONS OF LAW

(1) This Court has jurisdiction pursuant to the Tucker Act, 28 U.S.C. § 1346(a)(2), since damages sought do not exceed $10,000.

■ (2) The erosion of plaintiff's property past the boundary of the government's easement, constitutes a taking for which plaintiff is entitled to just compensation. This is not a situation where there is navigable servitude because the rights of the government are derived from the easements granted and not from its sovereign right to aid navigation on a navigable waterway. But even if navigable servitude is involved, the plaintiff could still recover because of the erosion to her fast lands, which are well above high tide. *United States v. Virginia Electric and Power Co.,* 365 U.S. 624, 627, 81 S.Ct. 784, 787, 5 L.Ed.2d 838 (1961); *United States v. Willow Power Co.,* 324 U.S. 499, 509, 65 S.Ct. 761, 767, 89 L.Ed. 1101 (1945). Nor is the erosion a consequential damage for which no compensation can be had. *United States v. Dickinson,* 331 U.S. 745, 750, 67 S.Ct. 1382, 1385, 91 L.Ed. 1789 (1947). "The mere fact that all the United States needs and physically appropriates is the land up to the new level of the river, does not determine what in nature it has taken. If the Government cannot take the acreage it wants without also washing away more, that more becomes part of the taking." *Id.*

■ (3) The release executed by plaintiff's predecessor in title is not sufficiently broad to be binding upon the plaintiff under the facts of this case. The release was contained in the deed which granted an easement to the government, and applies only to that easement. See *Hilton v. Duke Power Company,* 254 F.2d 118, 123 (4th Cir.1958). At the time of the granting of the easement it was not contemplated that the full 320 feet would be used for the channel, because the project authorization provided that the ultimate dimensions of the channel would be 12 feet deep and 90 feet wide at the bottom. Thus it is reasonable to assume that the waterway would not use the entire 320 feet granted in the easement. (The government acknowledges the fact that in high bluff areas a larger easement was taken). Additionally, it should be noted that plaintiff's claim is based on a taking of her land—not just for an injury thereto.

■ (4) The statute of limitations does not bar complete recovery by plaintiff because the erosion constitutes a continuous taking, *United States v. Dickinson,* 331 U.S. 745, 749, 67 S.Ct. 1382, 1385, 91 L.Ed. 1789 (1947); however, the plaintiff's recovery is limited to damages for erosion occurring within six years of the filing of this suit. *Hilton v. Duke Power Co., supra,* 254 F.2d at 122.

■ (5) Plaintiff, Loy Ree Ballam, is entitled to damages in the total amount of $8,804.00, caused by the taking of her land, and the cost of protecting the land from future erosion. Testimony as to the value of plaintiff's property ranged from $7,000 per acre to $50,000 per acre, neither of which valuation was, in the opinion of the Court, realistic. Rather, the Court believes that a valuation of $14,000 per acre is more reasonable under the evidence, and, therefore finds the total value of plaintiff's property to be $65,800. (4.7 acres × $14,000).

Since, under the evidence, plaintiff lost, through erosion, .046 of an acre, the value of the property taken was $644. ($14,000 × .046).

With respect to the cost of protecting the property from future erosion, the testimony ranged from $50 to $200 per running foot for 136 feet. (One witness said the cost could run as high as $300). In addition, there was testimony that the land would have to be sloped prior to the installation of a revetment. Again, neither of the extremes in the testimony can be considered reasonable. (It is interesting to note, however, that the $200 figure was offered as a cost to the government, by a representative of the Army Corps of Engineers). A more realistic amount under the evidence would be $60 per running foot, or a total, for 136 feet, of $8,160. In this connection, the Court finds that it would have been sound economy in view of the character and nature of the property to have made that expenditure. *United States v. Dickinson,* 152 F.2d 865, 870 (4th Cir.1946), aff'd 331 U.S. 745, 751, 67 S.Ct. 1382, 1386, 91 L.Ed. 1789 (1947).

(6) Plaintiff is entitled to judgment in the amount of $8,804.00.

(7) Plaintiff is not entitled to any injunctive relief under the Tucker Act, 28 U.S.C. § 1346(a)(2). See *Lee v. Thornton,* 420 U.S. 139, 140, 95 S.Ct. 853, 854, 43 L.Ed.2d 85 (1975).

### JUDGMENT

On this the 1st day of December, 1982, the Court having coincident herewith made its findings of fact and conclusions of law herein, and having found and concluded that plaintiff, Loy Ree B. Ballam, is entitled to judgment against the defendant, United States of America, in the sum of Eight Thousand Eight Hundred and Four ($8,804) Dollars, together with interest thereon from the date of this judgment at the current rate per annum allowable in judgments against the United States, it is, therefore,

ORDERED, ADJUDGED and DECREED by the Court that the plaintiff, Loy Ree B. Ballam, do have and recover of and from the defendant, United States of America, the sum of Eight Thousand Eight Hundred and Four ($8,804) Dollars, together with

interest thereon from the date of this judgment at the current rate per annum allowable in judgments against the United States.

It is further ORDERED, ADJUDGED and DECREED that all injunctive relief requested by the plaintiff is DENIED.